**BEARD et al. v. MARSHALL et al.**

**No. 843.**

Court of Civil Appeals of Texas. Eastland.

Oct. 24, 1930.

Rehearing Denied Nov. 21, 1930.

Grisham, Patterson & Grisham, of Eastland, for appellants.

Scott & Gilbert, of Cisco, for appellees.

FUNDERBURK, J.

The county school trustees of Eastland county, following the adoption of "The County-Wide Plan of Education," which, it seems, was one providing for the grouping of certain school districts for high school purposes, the exact nature or authority for which does not appear from the record, prepared, submitted to the state board of education, and had approved by that board, a map or plat, showing a grouping of certain school districts. One grouping shown by this map was of the common school districts known as Sabanno No. 87, Curtis No. 16, and Union Hill No. 31, together with Pioneer independent school district; the latter being designated as a high school center for the four districts. On September 11, 1930, said county school trustees, in response to a petition from the trustees of Pioneer independent school district, designed to have them carry into effect said plan, proceeded to "group or consolidate" said districts, and recited that "this completes the unit approved by the State Department of Education, and was in accordance with article 2922a, R. S. of 1925; also, in accord-

ance with the late rural aid law statutes, 189-199." The action of the county school trustees also included "a requirement that Pioneer buy sufficient school grounds to make not less than 10 acres plot; also, Pioneer is to take care of the teachers that were secured for the added territory." The field notes of the district thus formed were set out and trustees appointed. One trustee was appointed for each of the common school districts, except Sabanno, as to which the name was left blank, and four trustees for the independent district. The order appointing the trustees referred to the new district as "The Pioneer Consolidated District."

On September 22, 1930, following said action of the county school trustees of September 11, 1930, the trustees of each of said common school districts, "for themselves and as such trustees, and also as patrons and taxpayers, and also in behalf of the patrons and taxpayers residing within" the said three common school districts, filed this suit against the members of the county school trustees of Eastland county and newly appointed trustees for the new district, seeking an injunction against carrying into effect said order. A temporary injunction was granted. Defendants filed a plea in abatement and subject to same a motion to dissolve the injunction. At the same time plaintiffs filed their first amended original petition. On October 1, 1930, the court, upon hearing, overruled the plea in abatement and adjudged that the temporary injunction be perpetuated, thereby restraining the defendants from "in any manner exercising, managing or operating, or attempting to, in any manner, exercise any authority under and by virtue of the order passed by the County School Trustees under their order of September 11th, 1930, except, however, that said defendants are not enjoined from operating the bus or conveyance used for transporting of the scholastics in the purported consolidated district during the pendency of this suit," etc. The defendants have appealed, and an advanced submission of the case has been granted.

Since appellants certainly raise the question of the correctness of the trial court's judgment, it is believed that the discussion of the questions presented may be simplified by a consideration of the several grounds upon which the appellees in the lower court, as disclosed by their pleadings, challenge the validity of the order in question of the county school trustees. The plaintiffs, by their amended pleading, alleged that said order was void for the following reasons:

"1st: Because the Order or Resolution was never adopted by the Board of Trustees, as appears by said Order or Resolution.

"2nd: That the Trustees of said Common

School District had no notice of the intended passing of the said Order or Resolution, and no opportunity to protest the illegal action of the said Board.

"3rd: That the said County Board of Trustees failed to secure the approval of the Board of Trustees of the said Union Hill, Sabanno and Curtis Common School Districts of the intended grouping or consolidation of the said Union Hill, Sabanno and Curtis Common School Districts with the Pioneer·Independent School District.

"4th: That the pretended order or resolution, attempts to group or consolidate districts not contiguous as required by statutes.

"5th: That said County Board of Trustees had no power or authority to enlarge, diminish or change the boundaries of the Pioneer ·Independent School District, without a vote at an election for that purpose, or, to displace the duly constituted and elected trustees of the Pioneer Independent School District, and the Order or Resolution passed by the County School Trustees had the effect, if carried out, of enlarging the boundaries of the Pioneer Independent School District by adding the three common school districts, and also displaced and supplanted the regularly elected Trustees of the Pioneer Independent School District residing therein, with the Trustees appointed by the County Trustees, who reside in other common school districts."

In testing the validity of the order in the several respects mentioned, it is necessary to consider certain other allegations in plaintiffs' pleading, which, for the present purpose, are to be treated as facts. It was alleged that the scholastic population of the three common school districts was 128, and of the independent school district was 220, making a total of 348. It was also alleged that the county school trustees "passed an order attempting to *group* (italics ours) or constitute Common School District Union Hill No. 31, Sabanno Common School District No. 37, and Curtis Common School District No. 16, with Pioneer Independent School District for school purposes, in accordance with article 2922a, R. S. of 1925."

The allegations of the plaintiffs' pleading just quoted would justify, if it does not require, us to consider the questions raised, upon the basis of its being an admitted fact that the order in question attempted a grouping of the districts for school purposes rather than a consolidation, as provided in R. S. 1925, arts. 2806 to 2815, or an annexation of common or independent school districts to another independent or common school district, as provided in article 2922a, as subsequently amended (Vernon's Ann. Civ. St. art. 2922a). But, since the terms "group" and "consolidate" appear to be rather loosely used, not only in the order under attack, but

in the law itself, and the testimony of witnesses, we will undertake to construe the order and the statutes to determine the validity of the order with reference to whether the county school trustees attempted a consolidation, a grouping, or an annexation. Articles 2806 to 2815, R. S. 1925, provide for a consolidation of districts. The consolidation therein provided for must be initiated by an election. We may rule that character of consolidation out of consideration, because the plaintiffs, by their petition, allege that the action of the county school trustees was "in accordance with article 2922a." An examination of that statute discloses that it provides two methods for the formation of rural high school districts. One is by grouping; the other is by annexation. The method by grouping is only available where the districts are contiguous and where the districts, if common school districts, contain a scholastic population of less than 400, and if independent school districts, less than 250. The method by annexation is never available except where there is a common school district having a scholastic population of 400 or more, or an independent school district having a scholastic population of 250 or more. Nor do the county school trustees have authority to annex common or independent school districts to either a common or independent district without the "approval of the Board of Trustees of each school district affected." It is apparent from the allegations in plaintiffs' petition that if the four school districts in question were contiguous and the statute authorizes the grouping of common school districts with independent school districts, the county school trustees were authorized to group the districts in question to form a rural high school district without being petitioned so to do by the trustees of the district affected, or without notice to such trustees or without affording opportunity to such trustees to be heard in protest, and regardless of their approval. If, as to this, the statute called for construction, the question has been decided correctly, we think, in Canon v. Rasbury (Tex. Civ. App.) 21 S.W.(2d) 76. On the other hand, the county school trustees were without authority to annex the common school districts to the Pioneer independent district, the latter having fewer than 250 scholastics. Nor could they do so in any event without the "approval of the Board of Trustees of each school district affected." It would seem, therefore, that, aside from the question of whether or not the four districts were contiguous, and whether the statute authorizes both common and independent school districts to be grouped together, the determinative question presented is: Did the county trustees, by said order, attempt to group the districts, or did they attempt to annex the common school districts to the Pioneer independent district?

■■ The record of the action of the county school trustees is far from satisfactory. It is greatly lacking in that certainty and definiteness which ought to characterize an act or proceeding so important. But we have concluded that well-known rules of construction will enable us to determine whether the order attempted a grouping of the districts, and was therefore authorized and lawful, or whether it attempted to annex common school districts to an independent school district having less than 250 scholastic population, without the approval of the trustees of the districts affected, and therefore unauthorized and unlawful. Under such circumstances, unless some fact or facts appear which are clearly inconsistent with an intent to group the districts, it must be held that a grouping was intended. Any ambiguous act or proceeding of public officers capable of either of two meanings, one lawful and the other unlawful, should be construed to be lawful. The only facts urged upon our attention claimed to be inconsistent with an intention to group the districts are the requirement that "Pioneer buy sufficient school grounds to make not less than 10 acres plot"; the further provision that, "also Pioneer is to take care of the teachers that were secured for the added territory," and the designation of the purposes of the act as "school purposes," rather than "high school purposes." There may also be mentioned the reference to the district as "Pioneer Consolidated District."

The order does not expressly provide that the high school shall be located at Pioneer or in the former Pioneer independent district. The requirement made as to Pioneer buying sufficient school ground is referable to the so-called "County-wide Plan of Education," mentioned in the testimony of the county superintendent, which seems to have contemplated that the high school for the grouped districts would be at Pioneer. Such a plan appears to have the sanction of law if it is not expressly provided for by some statute not called to our attention. See section 8, c. 36, Acts Second Called Session, 41st Legislature (1929) p. 59. That provision of the order is also referable to the voluntary proposal of the trustees of the Pioneer district to provide such added ground made in their petition which initiated the action of the county school trustees in question.

The further provision that "Pioneer is to take care of the teachers that were secured for the added territory" is to us wholly meaningless and without explanation in the record. For that reason we are unable to say that it is wholly inconsistent with any intention to group the districts.

The designation of the purposes of the grouping as "school purposes" by no means conclusively shows an intention not to group for "high school purposes." Only a broader term was employed, which certainly would include high school purposes.

Every other provision of the order and every other fact shown by the testimony as referable to the order is just as consonant with a grouping as an annexation.

■ The pleadings are not such as properly to raise any question of the invalidity of the order on the first ground urged, namely, that same "was never adopted by the Board of Trustees." Plaintiffs allege that the county school trustees "passed an order attempting to group," etc. No complaint was made of the formal insufficiency of the order; the gist of plaintiffs' complaint being that the county school trustees "by the resolution aforesaid, intended and still intend to abolish the elementary schools in the three common school districts aforesaid and compel the pupils of scholastic age within said three districts to attend school at Pioneer," with certain alleged results. If no such order was made, it is difficult to see how any right to complain of same would arise. The real point seems to be that the minutes of the meeting were not signed. It was shown that it was the custom to sign the minutes at the next meeting, which had not been held at the time of the trial. The testimony, we think, raised no real issue of fact as to the correctness of the record as showing the action of the county school trustees, but at most a question of the proper interpretation of such record. We accordingly hold that the order was not void solely because the minutes were not signed.

■ We next consider the question of whether said article 2922a authorizes the inclusion in one group of both common and independent school districts. The statute reads: "* * * The county board of school trustees shall have the authority to form one or more rural high school districts, by grouping contiguous common school districts having less than four hundred scholastic population and independent school districts having less than one hundred and fifty scholastic population," etc. The appellees contend that only common school districts may be grouped with common school districts and independent school districts with independent districts. The language of the statute may be susceptible of that meaning. But very certainly the succeeding provision authorizes the annexation of both common and independent districts to either common or independent districts, and it is not reasonable, we think, that an exactly opposite policy was intended with reference to the plan of grouping to form a rural high school district, and the plan of annexing districts to others to form such rural high school districts. We are therefore of opinion that the language above quoted should be construed to mean just what it would mean if

it read as follows: "The county school trustees shall have the authority to form one or more rural high school districts by grouping contiguous common school districts (having less than 400 scholastic population) and independent school districts (having less than 250 scholastic population)."

Appellees further contended that the order of the county school trustees was void because the school districts in question were not contiguous within the meaning of the statute as above quoted. The point of the argument is that the statute only authorizes the grouping of districts, each of which is contiguous to every other. If this is the correct sense in which the word is employed, then, under the record before us, the county school trustees were without authority to group the districts in question. While each district is contiguous to one or two others, no district is contiguous to every other one. Standing alone, the language of the statute is susceptible of the meaning contended for by appellees. The legislative intent must be ascertained by rules of construction. One such rule is to look to the purposes of the act and construe each provision in the light of every other in the same act. If the districts authorized to be grouped must each be contiguous to every other, then it could rarely happen that more than three districts could be grouped. We cannot imagine a case where more than four districts could be grouped. But the same act recognizes that as many as seven districts may be grouped. Article 2922c provides that even more than seven districts may be grouped when authorized by a majority of the qualified electors in the proposed rural high school district. These provisions were futile if each district is required to touch every other district. From this consideration we are justified, we think, in not adopting that interpretation of the statute. We believe that "contiguous," in the sense here employed, means that the districts must so touch one another that all may be included in a common boundary line, without any intervening spaces.

Before closing, it may not be amiss to observe that the evidence did not certainly disclose that the county school trustees, in passing the order in question, intended to abolish the elementary schools. If they did, they had no authority to do so under the order as we construe same, because the statute limits and regulates their duty in that matter. If any attempt should be made to do so, a different case would be presented.

Being of opinion that the injunction should not have been perpetuated, and that the judgment of the trial court should be reversed and the cause remanded, it is accordingly so ordered.