### ELLIOTT COMMON SCHOOL DIST. NO. 48 et al. v. COUNTY BOARD OF SCHOOL TRUSTEES et al.
#### No. 4545.

Court of Civil Appeals of Texas. Texarkana.
Oct. 25, 1934.

Rehearing Denied Nov. 1, 1934.

O. B. Pirkey, of New Boston, for appellants.

O. H. Atchley, of New Boston, for appellees.

LEVY, Justice (after stating the case as above).

The point presented for determination first is that of whether in the circumstances the organization of the high school district was in the manner prescribed by article 2922a, Revised Statutes, as amended by Acts 1927, 1st Called Sess., c. 78, § 1 (Vernon's Ann. Civ. St. art. 2922a), and legally effective as such from the date of the order of the county school trustees. Article 2922a expressly authorizes the creation of a rural high school district, firstly, "by grouping contiguous common school districts having less than four hundred scholastic population and independent school districts having less than two hundred and fifty scholastic population." It is secondly "provided also," evincing an intention and meaning to deal with and apply to some other and different plan, "that the county school trustees may annex one or more common school districts or one or more independent school districts having less than two hundred and fifty scholastic population to a common school district having four hundred or more scholastic population or to an independent district having two hundred and fifty or more scholastic population." As necessary to the existence of the latter right is the condition of "approval of the board of trustees of each school district." The first clause or section of the article evidently was intended to authorize the organization of a rural high school district distinctively as such by the "grouping" or joining together so as to form one integral whole of existing elementary districts of the same grades or same classes, which are "contiguous" or have actual or uninterrupted physical connection. The second clause or section of the article was intended to grant the authority, "upon the approval of the board of trustees of each school district affected," to "annex" or attach, in the view of making an integral part of something larger, an existing common school district of a lesser grade and scholastic population to either another existing common school district or to another existing independent school district of larger grade and scholastic population. The two plans respecting the establishing and operating a rural high school are separate and distinct, under a statutory provision therefor. In the first plan of "grouping" existing common school districts there is the affirmative requirement that such common school districts shall be "contiguous." The word "contiguous," as used, means, as held, that the districts must touch one another. Beard v. Marshall (Tex. Civ. App.) 32 S.W. (2d) 496. The word "contiguous" has the primary meaning of actual contact or uninterrupted connection, and does not imply territory or districts separated by other territory. See 13 C. J. p. 110. In the second plan, though, of authorizing the annexation of a common school district of less scholastic population to an existing school district of larger scholastic population, the word "annex" alone is used. The word "contiguous" does not follow the word "annex." It is presumed that the legislative intention was not to have the word "annex" construed strictly the same as the word "contiguous," but as generally understood standing by itself. The words "annex" and "attach" are synonyms. As ordinarily understood "annex" means to make an integral part of something larger. While "annex" implies physical connection or physically joined to, yet the word may not necessarily be confined to a narrow and strict sense. Physical connection may be dispensed with, and things may be annexed without being in actual contact, when reasonably practicable. 3 C. J. p. 193; Redfield School Dist. No. 12 v. Independent School District, 14 S. D. 229, 85 N. W. 180; and other examples. And the statute does not provide that physical connection may not be dispensed with when deemed by school trustees not reasonably practicable or not reasonably inconvenient. Suppose, for instance, that the two school districts were separated by the intervening space of a regularly established and existing public highway or roadway. The expediency of annexing a smaller to a larger district was left unrestricted to the county school trustees and the trustees of each district affected, contemplating that the smaller district shall be adjacent, or as nearly so as reasonably practicable. The Legislature intended that the plan of the high school district should be so formed by annexation as to afford all children within the boundaries an opportunity to enjoy with reasonable facility

and convenience the benefits of such school. It is evident the determination of the school trustees to annex the two districts in suit was not in unreasonable disregard of the best interests of the pupils within the boundaries, or arbitrary or fraudulent or oppressive. The principle would fairly apply that "under a statute authorizing independent school districts to attach or annex thereto adjacent territory, if the board of education deem it proper, the extent of the territory which may properly be regarded as adjacent, and hence the territory which may be so attached or annexed, is within the sound discretion of the board." 56 C. J. p. 203.

██ The sufficiency of compliance with statutes prescribing the procedure for creation of school districts should be construed liberally, and no requirement should be read into it which is not plainly expressed or necessarily inferred therefrom. 56 C. J. p. 214. Therefore it is believed that a view of the proceedings may fairly be taken that there was an annexing of the two districts within the spirit of the statutory provision. The high school was formed under the second clause or section by the mode or plan prescribed of annexing or attaching to the De Kalb Independent School District, which was of larger scholastic population, the Elliott Common School District, which was a district of smaller scholastic population. The school trustees of each district gave approval for the annexation or attachment to the De Kalb Independent School District of the Elliott Common District in the object of the enlargement for high school purposes. The two districts so annexed are each respectively of the grades and classes stated in the statute that could be annexed or attached for participation in the benefits of an enlarged district for high school purposes. And the county school trustees, acting in their province, made and entered of record formal order annexing such school districts for high school purposes. The particular defective proceeding, if at all, must rest upon the sole fact that the two school districts at the time of the order of annexation "was separated by a narrow strip of territory, composing a part of the Garland Common School District." However, as further appears, "very shortly after said Elliott C. S. D. was annexed to the De Kalb I. S. D. said Garland Common School District was annexed to De Kalb I. S. D. for high school purposes, thus making all such districts contiguous." The sole fact that the Elliott Common School District was annexed "very shortly" before and not at the very time or in the same formal order of annexation of the Garland

Common School District may not, it is believed, be given the fatal consequences of rendering the annexation of the Elliott Common School District absolutely void, as wholly beyond the power of the county board of school trustees in all events to make. There was a substantial compliance with the statute. But concede there was an irregularity of proceeding, as at most it could be, the curative Act of the 42d Legislature, 2d Called Session, p. 63, c. 39 (Vernon's Ann. Civ. St. art. 2815g—2) effective October 6, 1931, would be applicable. 56 C. J. p. 241; 59 C. J. § 713, p. 1178. Finding of fact No. 4 shows fully the recognition of the high school district. Section 1 of the act (Vernon's Ann. Civ. St. art. 2815g—2) reads, as pertinent: "Section 1. All School Districts, including Common School Districts, * * * and Rural High School Districts, * * * heretofore laid out and established or attempted to be established by the proper officers of any County or by the Legislature of the State of Texas and heretofore recognized by either State or County Authorities as School Districts, are hereby validated in all respects as though they had been duly and legally established in the first instance. * * * All acts of the County Boards of Trustees of any and all counties in rearranging, changing or subdividing such School Districts or increasing or decreasing the area thereof, in any School District of any kind, or in creating new Districts out of parts of existing Districts or otherwise, are hereby in all things validated."

██ It is urged next that even though the original annexation be deemed legal, yet the order of April 4, 1933, permitting the withdrawal of the Elliott Common School District from the high school district, was final and conclusive, as within the authority of the county school trustees to pass. That the order of rescission of April 11, 1933, was void as without the power of such school trustees, although no notice was given the district trustees of the prior contemplated order of April 4. The full answer thereto must be, we think, that there is no provision of law applicable to the severance or withdrawal from a duly organized rural high school district of which it is a component part of an elementary school district. The articles cited by appellant may not be made applicable. Article 2922a expressly confers upon the county school trustees "the authority to abolish a rural high school district on a petition signed by a majority of the voters of each elementary district composing the rural high school district." It is only, as provided, "when such district has been abolished the elementary districts

shall automatically revert back to their original status." Quoting, as applicable rules, from Slater v. Kesey, 102 Cal. App. 266, 282 P. 1021, 1023: "An express declaration of terms upon which a district may sever its association with a union district will be deemed to be exclusive and to preclude any other' method of withdrawal." Further: "It may not be assumed that because the Legislature failed to specifically provide the means of withdrawal with relation to a portion of a district, therefore an absolute right exists to withdraw in this segregated fashion. The omission to legislate in this regard enforces the conclusion that the Legislature intended to permit a former district to withdraw from the union district only as an entire unit, or not at all." A rural high school was authorized to be organized, and having done so, it must be dissolved in the manner prescribed by the statute. When once organized it cannot be dismembered, but can be dissolved. The order of April 4, 1933, was legally ineffective for want of authority in any event to allow withdrawal of the intermediate school district.

It is concluded that the trial court has correctly decided the case, and the judgment is accordingly affirmed.