THE STATE OF TEXAS, EX REL J. H. CHILDRESS V.
COUNTY SCHOOL TRUSTEES OF SHELBY COUNTY ET AL.

No. A-2936. Decided April 18, 1951.
Rehearing overruled June 13, 1951.
(239 S. W., 2d Series, 777.)

*Emmett Wilburn,* District Attorney, *Lane & Anderson* and *J. R. Anderson,* all of Center, for petitioners.

It was error for the lower courts to hold that the consolidated rural high school district was a legally created county line rural high school district; that the statutes authorized the formation of said district, and that it was proper to annex the adjoining districts to the Joaquin Independent School District for the purpose of creating the new district. County Bd. of School Trustees v. Gray, 142 S.W. 2d 697; Henderson v. Miller, 286 S.W. 501; State v. Cadenhead, 129 S.W. 743.

*Dudley Davis,* of Center, for respondents.

The judgment of the Court of Civil Appeals and the district court are correct in every particular, as the creation of the consolidated Rural High School was properly authorized by Article 2922a, as amended, and that the trustees appointed had full authority to act. Dawn Common School Dist. v. County Board,

205 S.W. 826; Fairfield Ind. Sch. Dist. v. Streeman Ind. Sch. Dist., 222 S.W. 2d 651; Bell v. Kirkland, 41 S.W. 2d 443.

MR. JUSTICE CALVERT delivered the opinion of the Court.

This is an action in the nature of Quo Warranto in which it is sought to have adjudged illegal and void an order of the County School Trustees of Shelby County, State of Texas, passed on October 1, 1949, by which said Trustee undertook to form or create a rural high school district by annexing Jackson Common School District No. 77 of Shelby County, Fellowship Consolidated Common School District No. 74 of Shelby County, and Eagle Mill County Line Common School District No. 36 of Shelby and Panola Counties to Joaquin Independent School District No. 38 of Shelby County, Texas, and to name the district which they thus undertook to create, "Central Consolidated Rural High School District No. 36 of Shelby County, Texas." The action also seeks to have it adjudged that the persons appointed by the County School Trustees as trustees of the district which the aforesaid order undertook to create are acting without legal authority.

The case was submitted on an agreed statement of facts. Judgment was rendered by the trial court finding the defendants not guilty, denying all relief prayed for, and adjuding Central Consolidated Rural High School District No. 36 of Shelby County, Texas, to have been legally created, and the trustees thereof to be lawful officers. The judgment was affirmed by the Court of Civil Appeals. 233 S.W. 2d 326.

The stipulations of fact are set out in full in the opinion of the Court of Civil Appeals. Only those facts bearing directly on the questions in controversy will be noticed here.

Joaquin Independent School District with a scholastic population of more than 250, Fellowship Consolidated Common School District with a scholastic population of more than 250 and less than 400, and Jackson Common School District with a scholastic population of less than 250, were all situated wholly within Shelby County. Eagle Mill County Line Common School District with a scolastic population of less than 250 was situated partly in Shelby County and partly in Panola County. The area of the four districts combined exceeded 100 square miles.

With the consent of the County School Trustees of Panola County, the County School Trustees of Shelby County ordered an

election to be held on September 24, 1949, in each of the four school districts to determine whether the three common school districts "shall be annexed by said Shelby County Board of School Trustees to Joaquin Independent School District No. 38 of Shelby County, Texas, to form a county line rural high school district, under and by virtue of Articles 2922a, 2922c, and 2922d, Revised Civil Statutes of Texas, as amended, for the purpose of establishing and operating rural high schools within said proposed county line rural high school district." A substantial majority of those voting at the election voted "For Annexation", whereupon the County School Trustees of Shelby County entered the order complained of. Since the order was entered the district thus created or attempted to be created has been recognized by all school authorities as a county line rural high school district and not as an independent school district.

Before this Court petitioners attack the validity of the order of the County School Trustees of Shelby County on three grounds as follows: (1) That Articles 2922a, 2922c and 2922d do not authorize the creation of rural high school districts by annexation of one or more districts to another district. (2) That in no event may a common school district with a scholastic population of more than 250 be annexed to an independent school district having a scholastic population of 250 or more. (3) That in any event, the County School Trustees were without authority to take from Joaquin Independent School District its status as an independent district, or to change its name, or to place the management of its affairs in the hands of trustees appointed by them.

Article 2922a reads in part as follows:

"*Art. 2922a*. In each organized county in this state, and in any county which shall hereafter be organized, the county school trustees shall have the authority to form one or more rural high school districts, by grouping contiguous common school districts having less than four hundred (400) scholastic population and independent school districts having less than two hundred fifty (250) scholastic population, for the purpose of establishing and operating rural high schools; provided, also, that the county school trustees may annex one or more common school districts or one or more independent school districts having less than two hundred fifty (250) scholastic population to a common school district having four hundred (400) or more scholastic population, or to an independent district having two hundred fifty (250) or more scholastic population * * *."

The order here under attack cannot be upheld under the first part of Article 2922a as forming the county line rural high school district by "grouping" because Joaquin Independent School District had a scholastic population in excess of 250. If the validity of the order is to be sustained under Art. 2922a at all it must be sustained under that part of the article which authorizes the annexation of certain districts to certain other districts. The proceedings referred to above show that this fact was recognized by the school authorities.

That part of Art. 2922a dealing with the annexation of school districts has been the subject of a number of opinions by the courts of civil appeals. In the following cases it was held that the article authorized county boards of school trustees to enlarge a nuclear school district with the required scholastic population by annexing to it other districts with the required scholastic population, though there appeared to be present no purpose or intent to create a rural high school district. County Board of School Trustees, et al v. Gray et al., 142 S.W. 2d 697, writ refused; Terrell et al v. Clifton Independent School Dist. et al., 5 S.W. 2d 808, writ refused; Henderson et al v. Miller et al, 286 S.W. 501, writ refused; Board of Dist. Trustees of Lanier Common School Dist. No. 49, Cass County, et al v. Board of County School Trustees of Cass County, et al, 232 S.W. 2d 100, writ ref. n.r.e.

In the following cases it was held or inferred that the latter part of Art. 2922a authorized the creation of rural high school districts through the annexation process. County Board of School Trustees of Limestone County, et al v. Wilson, et al, 15 S.W. 2d 144, writ dism.; County School Board of Angelina County, et al v. Homer Common School District et al, 191 S.W. 268, no writ history; Elliott Common School Dist. No. 48 et al v. County Board of School Trustees et al, 76 S.W. 2d 786, writ dism.; State ex rel. Lowe et al v. Cadenhead et al, 129 S.W. 2d 743, writ refused! County Board of School Trustees of Hale County et al v. Mayfield Common School Dist. No. 22 et al, 140 S.W. 2d 956, writ dism. correct judgm.; Live Oak County Board of School Trustees et al v. Whitsett Common School Dist. et al 181 S.W. 2d 846, writ refused; Dawn Common School Dist. No. 2 et al v. County School Board of School Trustees of Deaf Smith County, 205 S.W. 2d 826, writ refused; Weaver et al v. Board of Trustees of Wilson Ind. School Dist., 184 S.W. 2d 864, writ refused want of merit, 143 Texas 530, 187 S.W. 2d 221; Fairfield Ind. School Dist. et al v. Streetman Ind School Dist. et al, 222 S.W. 2d 651.

The confusion is made manifest by a reading of the opinion of the Court of Civil Appeals in the case of Trinity Independent School Dist. v. District Trustees, Dist. 24, Trinity County, et al, 135 S.W. 2d 1021, in which this Court refused a writ of error, 134 Texas 689, thereby placing its stamp of approval on what was said. At one place in the opinion it was said: "Art. 2922a provides that the county school trustees shall have the authority *to form rural high school districts* by grouping contiguous common school districts *or by annexing an independent school district to a common school district, or by annexing one or more common school districts to an independent school district * * *.*" Later in the opinion it is said: "While the record shows that there have been consolidations *and annexations* of school districts with Trinity Independent School District, under the express terms of Art. 2922b *those annexations and consolidations have not changed the status of the Trinity Independent School District from an independent school district to a rural high school district * * *.*"

■ Adverting now to petitioners' first point. So far as we have been able to discover this is the first case in which the precise question here raised has been squarely presented. As a matter of fact it was not squarely presented by petitioners to the Court of Civil Appeals, which accounts, no doubt, for the failure of that court to discuss or pass on it. We have no doubt, however, of petitioners' right to raise it here and that right is not questioned by respondents. It appears obvious to us that it could not have been intended by the legislature that the latter part of Art. 2922a dealing with the power to annex should have the double purpose of authorizing the *enlargement of nuclear districts* by the annexation thereof of other districts as held in the group of cases first above cited, and of authorizing *the creation of rural high school districts* by the annexation of districts of certain classification to other districts of certain classification, as held in the group of cases last above cited. It becomes necessary, therefore, to determine which of those purposes was intended by the legislature.

It seems clear to us from a careful analysis of Chapter 19A of Title 49 of our statutes that by the latter part of Art. 2922a the legislature did not intend to provide a second method of forming rural high school districts but intended only to provide a second method of providing for better and stronger rural schools.

Even a casual reading of Article 2922a will show that the

legislature did not expressly provide for the creation of rural school districts by annexation. The first part of the article conferes authority on county boards of school trustees *"to form one or more rural high school districts by grouping * * *"* certain districts of certain classifications. Then the article continues: "Provided, also, that the county board may annex * * *" districts of certain classifications to other districts of certain classification. If the legislature had intended that the authority given to annex school districts should carry also the power to create a rural high school district by annexation it would have been a simple matter to have said so. It would have been a simple matter to have written the proviso in this fashion: "Provided, also, that *the county board may form a rural high school district by annexing etc."* This it did not do and we can find no authority for reading the language into the article when the legislature may have refused, with good reason, to write it therein.

■ Articles 2922a through 29221, with minor amendments added, were all sections of House Bill 38 enacted by the 39th Legislature in 1925 and all should be read and interpreted so as present a harmonious whole. Lacy et al v. State Banking Board et al, 118 Texas 91, 11 S.W. 2d 496, 502 (Com. App.), 39 Tex. Jur. 209, sec. 113. Throughout the various sections of the Act a distinction is recognized between a rural high school district and an independent or common school district enlarged through the annexation of other districts.

Article 2922b reads in part as follows: "Rural high school districts as provided for in the preceding article shall be classed as common school districts * * *; *provided that all independent school districts enlarged by the annexation thereto of one or more common school districts as provided for in Article 2922a shall retain its status and name as an independent school district, and shall continue to operate as an independent school district * * *."* If the legislature had intended that independent districts enlarged by the annexation of other districts should become rural high school districts we can perceive of no good reason why the legislature by Article 2922b was careful to recognize their status as something other than a rural high school district. The first part of Article 2922f makes provision for the discontinuance of elementary schools in rural high school districts and the last paragraph of the same article makes provision for the discontinuance of elementary schools in a common school district or an independent school district enlarged by annexation. If the legislature intended that the latter type

of school district—that enlarged by annexation—should be a rural high school district, then it did a foolish and futile thing when it added the last paragraph of the article. We should not interpret the series of articles so as to convict the legislature of foolish and futile action.

Article 2922h reads in part, as follows:

"In the event any of the elementary districts included within a *rural high school district or the common school districts annexed to a common or independent district, or the common school or independent district to which one or more common school districts are annexed,* as herein provided for, have outstanding bonded or other valid indebtedness, then at an election for that purpose, at a date, to be designated by the proper authorities, as provided by General Law, the question as to whether or not the *said rural high school district, common school district, or independent school district as the case may be,* shall assume and pay off such outstanding bonds or other indebtedness and whether a tax shall be levied therefor may be submitted to the qualified taxpaying voters of *such high school, common or independent district.* If a majority of the votes cast at such an election favor the assumption of such indebtedness then such indebtedness shall become valid and subsisting obligations of the said *rural high school district, common school district, or independent district; * * *."*

Here again the legislature clearly recognized a distinction between a rural high school district and a common or independent school district enlarged through annexations.

As further evidence of the distinction made by the legislature, we call attention to the language of Article 2922l. After making provision for the levying of taxes in rural high school districts the article continues: "Provided that the local taxes previously authorized by a district or districts *included in a rural high school district or annexed to a common or independent school district,* as provided for herein, shall be continued in force until such time as a uniform tax may be provided for the benefit of *the rural high school district or said common or independent district as enlarged by the annexation of the said common school districts thereto.*"

It follows from what has been said that the authority of county boards to create rural high school districts by annexation not only fails to find support in the express wording of

Article 2922a but it is directly contrary also to the legislature's own construction of the article as evidenced by its express recognition throughout the succeeding articles of the chapter that a common or independent school district enlarged by annexation is not in fact a rural high school district.

■ In many of the later cases decided by the Courts of Civil Appeals in which authority of a county board to form rural high school districts by annexation is either assumed or inferentially recognized, reliance is had on the court's opinion in the case of State ex rel Lowe et al v. Cadenhead et al, 129 S.W. 2d 743, writ ref. It is true that in that case the court makes the direct and positive statement that a rural high school district may be formed under Article 2922a by annexation but the statement is pure obiter dictum. The opinion of the court does not show whether the effort to create the rural high school district was by "grouping" or by "annexation". The opinion simply says that it was by the one method *or* by the other. Be that as it may, the authority of the county board to create the rural high school district by annexation was not questioned or decided in the Cadenhead case. The opinion of the court reflects that it was agreed by the parties "that the sole and only question to be determined by the court" was whether the enactment or Article 2806a, V.A.C.S. in 1935 had the effect of repealing Article 2922c V.A.C.S. This was the only question before the court and the only one decided. When the courts have a question presented to them for decision for the first time they have never regarded themselves as bound by obiter dictum. Boswell et al v. Pannel, 107 Texas 433, 180 S.W. 593, 597; Wells v. Lumbermen's Reciprocal Assn., 6 S.W. 2d 346 (Com. App.).

■ The fallacy which underlies a great many of the Court of Civil Appeals' opinions is the failure to distinguish between school districts and schools, and, more particularly, the failure to distinguish between rural high school districts and rural high schools. Many of the opinions use the terms interchangeably as though they were synomous. School districts and schools, or rural high school districts and rural high schools, are not at all the same thing. Rural high school districts like other common school districts and independent school districts are quasi-municipal corporations; rural high schools like high schools in other common and independent school districts are but one of the instruments or agencies used by the school district to accomplish the purpose of its corporate existence. Other instruments or agencies used by the school district are the elementary schools it operates and maintains. While high schools

in rural high school districts will almost cetrainly be rural high schools, high schools in common and independent school districts lying in rural areas will just as certainly be rural high schools. Article 2922a does not deal alone with rural high school districts. The purpose of the article was to make "provision for a better system of schools in the various counties of this state" and to remedy a situation whereby the legislature considered "our rural school and rural high school system is wholly inadequate". In other words, it was not the purpose of the article to deal alone with the creation of rural high school districts but on the contrary it was its purpose to strengthen and improve rural schools generally. Through the language of Article 2922a the legislature provided two methods of accomplishing this purpose: (1) by the creation of rural high school districts through "grouping" and (2) by strengthening existing common and independent districts through "annexation" of other district thereto.

■ Respondents contend that even if Article 2922a does not authorize the creation of rural high school districts through the annexation process, such authority may be found in Articles 2922c and 2922d. With this contention we do not agree.

Article 2922c reads as follows:

"No rural high school district, as provided for herein, shall contain a greater area than one hundred square miles, or more than ten elementary school districts, except that the county school board of school trustees may form rural high school districts, as provided in Article 2922a, containing more than one hundred square miles, upon a vote of a majority of the qualified electors in the said proposed rural high school district voting at an election called for such purpose; and provided further, that the said board of county school trustees may form a rural high school district containing more than ten elementary districts upon a vote of a majority of the qualified voters in each of the elementary districts within such proposed rural high school district."

This article does not purport to confer on boards of county school trustees the power to create rural high school districts. It is but a limitation on the power conferred under the first part of Article 2922a, with exceptions to the limitation. Bell et al v. Ditmore et al, 38 S.W. 2d 397.

Article 2922d reads as follows:

"The county board of trustees of two or more adjoining counties shall have the authority, upon the written order of a majority of the members of each county board concerned, to establish a county line rural high school district, and to designate the county which shall have supervision of said county line rural high school district. Said county line rural high school district shall be governed as other rural high school districts herein provided for."

This article like all the others referred to herein was a part of H.B. 38, appearing as Section 4 thereof. It must be read and interpreted in the light of and so far as is possible in harmony with the other sections of the bill. In Article 2922a the legislature was careful to define the types or classes of school districts that might be grouped to form a rural high school district. No district can be included in such a district unless it is contiguous to the other districts with which it is to be grouped. No common school district can be included in such a district unless it has a scholastic population of less than 400 and no independent school district can be included therein unless it has less than 250 scholastic population. By the terms of Article 2922c even the power granted in Article 2922a is limited so that a rural high school district cannot be created with an area of more than one hundred square miles except by the consent of a majority of the voters of the proposed district given at an election held for that purpose and so that such a district cannot be created with more than ten elementary districts except upon a favorable vote of a majority of the qualified voters in each of the elementary districts of the proposed rural high school district. As is pointed out by petitioners, to give Article 2922d the construction contended for by respondents would place in the hands of county boards of school trustees such unlimited power that they could, even without the consent of the voters, combine all the school districts of whatever character and scholastic population of two counties into one gigantic county line rural high school district. It is unthinkable that by separate sections of the same Act the legislature intended to limit so drastically the power of county boards of school trustees to create rural high school districts in one county and to confer such unlimited and unrestricted power to create county line rural high school districts on the county board of trustees of adjoining counties. It is obvious from a reading of the Act as a whole that the legislature did not intend to confer on county boards of school trustees unlimited and unrestricted power to create rural high school districts. In order to harmonize Article 2922d with the remainder of the Act so that the same

will not lead to an unreasonable result and thwart the obvious legislative intent, we hold that the power of county boards of school trustees to create county line rural high school districts is limited by the provisions of Articles 2922a and 2922c.

■ We do not agree with petitioners' second proposition. To restate it, it is that a county board of school trustees has no power under the latter part of Article 2922a to annex a common school district with a scholastic population in excess of 250 to a common school district with a scholastic population of 400 or more or to an independent district with a scholastic population of 250 or more; that the limiting phrase "having less than two hundred and fifty (250) scholastic population" modifies both "one or more common school districts" and "one or more independent school districts". This contention was fully examined and answered from a strictly grammatical standpoint by the Court of Civil Appeals. The history of the Act clearly supports the result reached by. the Court of Civil Appeals. As originally enacted that part of Article 2922a reads as follows: "Provided, also, that the county board may annex one or more common school districts to a common school district having four hundred or more scholastic population or to an independent district having one hundred and fifty or more scholastic population * * *." There was no limit on the size of common school districts that might be annexed. By the passage of House Bill 89 the Regular Session of the 40th Legislature, 1927, amended Article 2922a so as that the part under examination was changed to read as follows: "provided also that the county school trustees may annex one or more common school districts *or one or more independent schol districts having less than two hundred and fifty scholastic population* to a common school district having four hundred or more scholastic population or to an independent district having *two hundred and fifty* or more scholastic population * * *." The language shown in italics was added by the amendment. There is nothing in the amendment to indicate that the added phraseology was intended to alter, change or limit the power then existing to annex common school districts.

■ What has been said on the first question disposes of the third question. Under the express provisions of Article 2922b an independent school district enlarged by the annexation to it of common school districts retains "its status and name as an independent school district" and continues "to operate as an independent school district". Any action of a county board of trustees changing the name of such an enlarged district and taking the management and control of the school affairs of the district

out of the hands of the duly elected trustees thereof, contrary to the express terms of the statute, is void.

The order of the County School Trustees of Shelby County passed on October 1, 1949, purporting to create "Central Consolidated Rural High School District No. 36 of Shelby County Texas", is void, and those appointed trustees of said district by said order are acting as such without legal authority. It follows that the judgments of the Court of Civil Appeals and the district court are reversed and judgment is here rendered as above indicated.

Opinion delivered April 18, 1951.

MR. JUSTICE GRIFFIN, joined by JUSTICES BREWSTER AND GARWOOD, dissenting.

I believe the majority opinion is wrong for the following reasons:

Chapter 19A, containing Articles 2922a, 2922c and 2922d, Vernon's Civil Statutes, was originally passed in 1925 by the 39th Legislature, and for the purpose of "making provision for a better system of schools in the various counties of this State" and to remedy a situation whereby the Legislature considered "our rural school and rural high school system is wholly inadequate."

The first part of Article 2922a provides for the creation of rural high school districts by grouping certain named schools. Next is a section dealing with the annexation of certain school districts. This section follows the "grouping" section and is a part of the same sentence, being preceded by a semicolon. Such section starts with the words "provided also," etc. To uphold petitioners' contention that a rural high school district may not be formed by method of annexation, we must hold that the "provided also" and the clause having to do with the annexation of one school district to another, covers an entirely different subject than the subject of rural high schools as is discussed in the first part of Article 2922a. To so hold would be to make such second section unconstitutional and void and bring it within the prohibition of Article III, Section 35, Texas Constitution, that a bill must not contain more than one subject. On the other hand, to hold that "provided also" is a conjunction and means "besides" or "in addition to" (as held in Texas Employers' Ins. Assn. v. Perry, Tex. Civ. App., 35 S.W. 2d 1087, loc. cit., middle 1st col., p. 1089, writ refused), and providing for another

method or plan of forming a rural high school district possessing some of the characteristics of an independent school district, is to give constitutionality to the act and validity to the purpose the Legislature had in mind in passing the law. As to the use of "provided" in legislation as a conjunction, see the authorities cited in 34 Words and Phrases, Per. Ed., pp. 672 et seq.; Rae v. Baker, Tex. Civ. App., 38 S.W. 2d 366, loc. cit. (5), p. 368, writ refused.

The majority attempts to justify their holding by drawing a distinction between a rural high school district and a rural high school. I do not see the relevancy, or the substance, of such distinction in determining the validity of the school district in this suit. The majority offers as an additional reason for holding there can be no creation of a rural high school district by annexation, that there are no words providing such action in the "provided also" "annexation" clause. By the same token there are no words authorizing the creation of a rural high school, and, according to the majority's reasoning, no rural high school may be created by annexation.

Another effect of the majority opinion is to deny the benefits of the rural high school act to common school districts of more than 400 scolastic population and independent school districts of more than 250. To hold the "annexation" clause another means of creating a rural high school district, is to make available rural high school districts to both common and independent school districts of all classifications. The title to the Act in nowise supports the construction given to the Act by the majority opinion. Under the majority opinion, no rural high school district can be created having the attributes of an independent school district, but only those having the attributes of a common school district.

I regard it as having been settled by many decisions of the Court of Civil Appeals in which writs of error have been re-refused by this court for more than fifteen years, that a rural high school district may be formed by annexation. Although there has been no case by this court which reasons out this exact point, there have been many refusals of applications for writs of error in cases involving the validity of such created districts, which can only mean that this court has approved such holding.

The act in question has been upheld as constitutional every time it has been attacked, beginning with Henderson v. Miller, Tex. Civ. App., 286 S.W. 501, writ refused, on down at least as

late as County Board of Sch. Trustees v. Mayfield C. S. D. No. 22, Tex. Civ. App., 140 S.W. 2d 956, writ dismissed-correct judgment.

In the last cited case the formation of a rural high school district by annexation was involved, being a suit to set aside an order of the County Board of School Trustees to create a rural high school district by annexation, and the formation of such district was sustained. The Amarillo Court of Civil Appeals in that case said: "The constitutional authority of the Legislature to grant such powers (to create rural high school districts) to the county school board is no longer an open question" (citing numerous authorities); loc. cit., (1-3), 1st col., p. 960.

In the case of State ex rel Lowe v. Cadenhead (1939), Tex. Civ. App., 129 S.W. 2d 743, writ refused, a proceeding in quo warranto was brought seeking to invalidate the creation of Weinert Rural High School District No. 50. The opinion states that such rural high school district "exists as the result of an attempted grouping of a number of common school districts with, or *annexation of same* to Weinert Independent Consolidated School District * * * at an election * * * held Oct. 8, 1938 resulting in favor of the proposition to authorize the grouping *or annexation* of said districts." The opinion discusses the formation of rural high school districts as distinguished from consolidation of districts and states that, under Chapter 19A, Title 49, Articles 2922a et seq., Vernon's Civil Statutes. Ann., rural high school districts may be formed by six different methods, or combination of circumstances. Among the six there is specifically provided "(e) by annexing one or more common school districts to an independent school district having 250 or more scholastic population." This case has never been questioned by any later case, but has been accepted as a pronouncement of the law with regard to formation and characteristics of rural high school districts. In addition to the above cases, the following cases approve the formation of school districts by annexation under Article 2922a: Lee v. Leonard Ind. Sch. Dist., Tex. Civ. App., 24 S.W. 2d 449, writ refused; Terrell v. Clifton Ind. Sch. Dist., Tex. Civ. App., 5 S.W. 2d 808, writ refused; Trinity Independent School Dist. v. District Trustees, Dist. 24, Trinity County, Tex. Civ. App., 135 S.W. 2d 1021, writ refused; Live Oak County Board of Trustees v. Whitsett Common School Dist., et al, Tex. Civ. App., 181 S.W. 2d 847, writ refused, (district held invalid because it had more than seven elementary school districts and election failed in three districts); Dawn

Common School Dist. No. 2 v. County School Board of School Trustees of Deaf Smith County, Tex. Civ. App., 205 S.W. 2d 826, writ refused; Elliott Common School Dist. No. 48 v. County Board of School Trustees, Tex. Civ. App., 76 S.W. 786, writ dismissed; Fairfield Independent School Dist. v. Streetman Independent School Dist., Tex. Civ. App., 222 S.W. 2d 651, no writ history; Board of Dist. Trustees of Lanier Common School Dist. No. 49, Cass County v. Board of County School Trustees of Cass County, Tex. Civ. App., 232 S.W. 2d 100, refused; N.R.E.; County Board of School Trustees of Limestone County v. Wilson, Tex. Civ. App., 15 S.W. 2d 144, writ dismissed.

In Weaver v. Board of Trustees of Wilson Ind. School Dist., Tex. Civ. App., 184 S.W. 2d 864, writ refused, want of merit, 143 Texas 530, 187 S.W. 2d 221, an attack was made on the validity of annexation of the Morgan Independent School District to the Wilson Independent School District. The court overruled the attack and held that a valid rural high school district had been formed by annexation, either by an election prior to the order of the County Board of School Trustees, or by consent of the trustees of the two component districts. The court says:

'It appears from the record that the proceedings for annexation were governed by the provisions of Chapter 19A, Article 2922a et seq., which are set out in Volume 8 of Vernon's Annotated Civil Statutes, and deal with the establishment and control of rural high schools. *Article 2922a provides for their establishment* by the county school trustees *by grouping of certain school districts* or *the annexation of one district to another,* where the districts involved fall within the classifications specified in the article. Among the classifications is that of annexing an independent school district having less than two hundred fifty scholastic population to an independent school district having two hundred fifty or more scholastic population. Article 2922c provides that in the event the rural high school district to be formed shall contain a greater area than one hundred square miles its formation must be authorized by a vote of a majority of the qualified electors in the proposed rural high school district voting at an election called for such purpose. The record discloses that at the time the county school board entered its order annexing the Morgan district to the Wilson district, the Wilson district contained more than two hundred fifty, and the Morgan district contained less than two hundred fifty, scholastic population. As stated, the record is silent on the extent of the combined area of the Wilson and Morgan districts." (Emphasis added.)

In Wilson Independent School Dist. v. Weaver, 143 Texas 530, 187 S.W. 2d 221, this court, speaking through Chief Justice Alexander, discussed a practice matter, and then says: "We have carefully considered the opinion of the Court of Civil Appeals on the merits, and have concluded that a correct judgment was rendered therein. The application for writ of error is therefore refused for want of merit."

Petitioners cite Trinity Independent School Dist. v. District Trustees, supra, and County Board of School Trustees v. Gray, Tex. Civ. App., 142 S.W. 2d 697, writ refused, for authority that a rural high school district may not be created by annexation. Yet, in the Trinity Independent School District case, 135 S.W. 2d at p. 1023, top 1st col., the court states that the county trustees, under Article 2922a, may create rural high school districts by grouping, *or by annexation.*

In the Gray case, supra, the court says that although no brief has been furnished by Gray, evidently the action of the trial court in granting the injunction against the formation of the district sought by annexation was based on the construction of Chapter 19A, Articles 2922a, et seq., "as authorizing the formation of only rural high schools, and, in particular, as not authorizing the annexation of a common school district to an independent district by action of County Board with the consent of the trustees of the district affected." The injunction was dissolved and the district created held valid, thus disapproving the reasoning of the trial court and of Gray, and sustaining the annexation.

Much of the confusion in the decision claimed by the petitioners is a result of the failure to distinguish between the kinds of rural high school districts. The Legislature intended to authorize rural high school districts to be created which may have the characteristics of a common school district or of an independent school district. The reasoning of Judge Sanford in the case of County Board of School Trustees of Limestone County v. Wilson, Tex. Civ. App., 15 S.W. 2d 144, dismissed, and found on page 146 and 147 (3,4) correctly sets forth the intention of the Legislature in passing Chapter 19A and its amendments. This is further shown by reference to Article 2922c, providing for an election to create rural high school districts in certain instances. Unless the provision of Article 2922a with regard to annexations brings about the creation of a rural high school district, then no election is required in annexations of school districts to each other, and the County Board is left free to

annex districts without regard to areas, number of elementary districts, or the wishes of the residents of the proposed district. A reading of the whole of Chapter 19A clearly shows that the Legislature had no such intention.

The holding of the majority that an annexation is not a creation of a rural high school district, because there is no express provision in Article 2922c that such a result follows from an annexation, renders Article 2922c inapplicable to annexations, for the reason that the word "annexation" is nowhere used in Article 2922c. This must necessarily follow if the reasoning of the majority that "annexation" is a means of creating high schools or even rural high schools, but not a means of creating a rural high school district. Article 2922c provides *"No rural high school district,* as provided for herein \* \* \*except that the county school board of school trustees may form *rural high school districts,* as provided in Article 2922a \* \* \*in said proposed *rural high school district* \* \* \*; and provided further, \* \* \* may form a *rural high school district* \* \* \* within such proposed *rural high school district."* (Emphasis added.)

If the majority is correct, Article 2922c does not apply to annexations under Article 2922a. Article 2922a gives the County Board of School Trustees a free hand in annexing the districts therein described. They need not get the consent of anyone, nor hold any election whatsoever, unless Article 2922c applies. Nor is it required that a majority of the voters affected in any particular district must vote in favor of such proposal. I do not believe that the Legislature ever intended to permit such action on the part of the County Board of School Trustees, and leave the voters resident in the proposed districts helpless to avoid such result. I think Article 2922c applies to annexations and limits the county board. Under the majority opinion, the county board, by annexations and without any election whatsoever, can combine all of the school districts of any county into one large district. The majority also says that in Article 2922a the Legislature was careful to define the types or classes of school districts that might be grouped to form a rural high school district. No district can be included in such a district unless it is contiguous to the other districts with which it is to be grouped. By the same reasoning the districts to be annexed need not be contiguous to each other, but one may be in the southwest part of a county and the other in the northeast part of the county, for there is no requirement in the "annexation" proviso for contiguity, and this is one of the reasons assigned

by the majority for holding "annexation" does not create a rural high school district. If we will keep in mind the difference in government and administration of a common school district and of an independent school district, and also remember that the Legislature wanted to benefit all rural schools and rural sections, then all provisions of Chapter 19A became consistent and reasonable. They enable an independent school district to become a rural high school district without any loss of its former rights and freedom of administration; and at the same time permit common school districts to have the advantage of good rural high schools through annexation without losing their identity, as is done if they should consolidate with an independent school district under Article 2806 et seq., or be attached under Article 2742f.

A reading of the cases cited shows conclusively that, since the passage of the Act in 1925, it has been considered by a vast majority of the courts, and the school authorities of the State of Texas, that the provision for forming rural high school districts by annexation of certain districts is and has been valid. Particularly since State v. Cadenhead, writ refused, supra, the school authorities and courts have relied, without any serious question, upon the powers therein stated that belong to the county board of school trustees to form rural high schools by annexation. The Legislature has passed numerous acts validating rural high school as created by county school boards, and in practically all acts have validated annexations along with groupings.

I therefore would hold the act of the County Board of School Trustees, in creating the rural high school district by annexation, to be valid.

I agree with the majority opinion that petitioners' second proposition should be overruled, and with the reasons there given.

By specific direction of the latter part of Article 2922b, the district created has all the status of an independent school district and must retain the name of the Joaquin Independent School District, No. 38 of Shelby County, as that is the nuclear independent school district to which the common school districts were annexed.

The County School Board erred in appointing the Board of Trustees, and the trustees should be elected by the voters from the enlarged district, as provided by Article 2922e and other laws

applicable to election of trustees in an independent school district.

Opinion delivered April 18, 1951.

Associate Justice Brewster and Garwood joined in this dissent.

Rehearing overruled June 13, 1951.