TEXAS ALCOHOLIC BEVERAGE COMMISSION, Appellant,

v.

KINGS FOUR, INC., Appellee.

No. 12907.

Court of Civil Appeals of Texas, Austin.

June 13, 1979.

John L. Hill, Atty. Gen., Max P. Flusche, Jr., Asst. Atty. Gen., Austin, for appellant.

O'QUINN, Justice.

Kings Four, Inc., holder of a mixed beverage permit originally granted in October of 1972, applied to the Texas Alcoholic Beverage Commission for renewal of the permit in September of 1977. After an administrative hearing, the Administrator of the Commission denied the application on the ground that holders of more than fifty percent of the stock of the corporation, under transfer of shares effective in July of 1977, had not been officers of the corporation "since the original permit was issued," within requirements of Section 28.04(d)(2) of the Alcoholic Beverage Code.

Kings Four appealed to district court in Travis County, and the trial court, after review of the proceeding record, pursuant to the Administrative Procedure Act and Section 11.67 of the Alcoholic Beverage Code, set aside the order of the Administrator and remanded the proceeding with instructions to renew the permit as requested by Kings Four.

From that judgment, the Commission has appealed and brings the single point that it was error to set aside the order ". . . which was based upon a finding that more than fifty percent of the stock of Plaintiff corporation had been changed since the time the original permit was issued."

We will overrule the point of error and affirm judgment of the trial court.

█ Section 28.02 of the Code fixes annual fees for mixed beverage permits at ". . . $2,000 for an original permit, $1,500 for the first annual renewal, $1,000 for the second annual renewal, and $500 for each subsequent annual renewal." When Kings Four presented its application for renewal in 1977 and tendered $500 in payment, objection was made that more than fifty percent of the stock of the corporation had changed "since the time the original permit was issued." Section 28.04(a) of the Code was invoked which provides: "A mixed beverage permit held by a corporation may not be renewed if the commission or administrator finds that legal or beneficial ownership of over 50 percent of the stock of the corporation has changed *since the time the original permit was issued.*" (Emphasis added).

Kings Four countered by claiming its compliance with the exception provided by Section 28.04(d)(2), as follows:

"(d) This section does not apply to a change in corporate control:

\*     \*     \*     \*     \*     \*

"(2) brought about when legal or beneficial ownership of over 50 percent of the stock of the corporation has been transferred to a person who possesses the qualifications required of other applicants for permits and is an officer of the corporation or has been an officer of the corporation *since the original permit was issued.*" (Emphasis added).

The parties are not in disagreement as to the essential and controlling facts, most of which were stipulated at the administrative hearing. In the early part of July, 1977, Laird Palmer and Thomas Goggan were elected officers of Kings Four, Inc., and shortly thereafter acquired stock of the corporation to the extent of more than sixty percent of its shares. In September or early October Kings Four applied for renewal of its permit. The Commission concedes that Palmer and Goggan possess the qualifications required of other applicants for permits. Neither Palmer nor Goggan was an officer in the corporation prior to July of 1977, but were officers at the time the application for renewal was filed.

The Attorney General, in behalf of the Commission, asserts, "From the record of the proceedings had before the administrative agency it is clear that the Administrator of the Alcoholic Beverage Commission has interpreted § 28.04(d)(2) as applying only in those situations where more than fifty percent of the corporate stock is transferred since the issuance of the original permit to an officer who was an officer of the corporation at the time of the issuance of the original permit." The Attorney General argues that any other construction would do violence to the legislative intent "to impose the higher fee upon any corporation in which the majority of the stock has been transferred *since the issuance of the original permit.*" (Emphasis added).

Subparagraph (d)(2) of Section 28.04 creates an exception to paragraph (a) for the transferee of "over 50 percent of the stock of the corporation" who can meet these three requirements:

(1) "possesses the qualifications required of other applicants,"

(2) "is an officer of the corporation,"

(3) "or has been an officer of the corporation since the original permit was issued."

It is conceded that Palmer and Goggan possess the qualifications required under (1) above. The remaining two requirements are alternative, and if either is met, the statute is satisfied. There is no dispute that Palmer and Goggan became officers of the corporation in July, prior to the application for renewal made some two months later, and were officers when renewal was sought.

By insisting on appeal that the officer must have been an officer of the corporation "at the time of issuance of the original permit," the Commission disregards the alternate requirement of subparagraph (d)(2) that the transferee "*is* an officer of the corporation" at the time application for renewal is filed. Neither courts nor administrators may rewrite, revise, edit, or amend statutes; that is a function reserved for the Legislature, and courts and administrators must seek to ascertain the legislative intent, as revealed by the language used in the statute, when called upon to construe or to administer the law.

The Commission argues that "It seems clear beyond doubt that the language of § 28.04(d)(2) is ambiguous, obscure, and difficult of interpretation. In this situation the indulgence of a presumption in favor of the State is required by the authorities . . ." in cases cited, in which statutes were found to be ambiguous. We find no ambiguity or obscurity in the statute. The fatal fault in the Commission's application of the statute to the facts of this case lies, not in the stars guiding an administrator in pursuit of higher fees from corporations in which a majority of the stock has changed hands, but rather in failing to read and accept the plain language of the statute.

In both paragraph (a) and in the exception to that provision, found in subparagraph (d)(2), the Legislature used the same term, with respect to the period following issuance of the original permit, in almost identical words: "since the time the original permit was issued," in paragraph (a), and "since the original permit was issued" in subparagraph (d)(2). The key word in each phrase is "since," an adverb, in each instance modifying the verb "was issued," which Webster defines as "In or during a part of the interval between a specific past time and the present." *Webster's New International Dictionary of the English Language,* 2d ed., unabridged.

It is obvious that in paragraph (a) the Legislature stated that the permit of a corporation may not be renewed if it is found that more than fifty percent of the stock has changed hands at any time since the permit was issued. If the Legislature had intended in subparagraph (d)(2) to use the same adverb "since" to modify the same verb "was issued" in a different manner, the final clause of the subparagraph should have been written to read, ". . . or has been an officer of the corporation *ever* since the original permit was issued." *Webster's Dictionary, supra,* points out that when "since" means "From a definite time until now," it is used "usually with *ever*; as he has kept it *ever* since."

The word "since," as used by the Legislature in each of the two subparagraphs in effectively identical phrases, simply refers to "a part of the interval between" issuance of the original permit and the date application for renewal is filed. The interval between these two points in time applies to transfer of stock in paragraph (a) and to any period in which the transferee of a majority of the corporate shares may have been an officer of the corporation. Thus the last two clauses of subparagraph (d)(2) are construed to mean: "and is [now] an officer of the corporation or has been an officer of the corporation [during any interval] since the original permit was issued."

To hold, as the Commission urges, that only the final clause of subparagraph (d)(2) is effective and that the clause "is an officer of the corporation" must be ignored because the final clause means the officer holding the transferred majority of stock must have been "an officer of the corporation at the time of issuance of the original permit," that is, "ever since" the original issue, would make sheer nonsense of the statute. Confronted with the problem of construing a statute, the Supreme Court very early said, "We should not readily suppose that the legislature intended to do a thing so useless and unmeaning." *Chambers v. State,* 25 Tex. 307, 312 (1860). As pointed out more recently by the Supreme Court, we should not interpret statutes ". . . so as to convict the legislature of foolish and futile action." *State v. School Trustees of Shelby County,* 150 Tex. 238, 239 S.W.2d 777, 781 (1951).

The construction we place on Section 28.04 allows the corporation holding a mixed beverage permit to renew its permit, even though ownership of more than fifty percent of the corporate stock has changed since the time the original permit was issued, in situations where (1) the person to whom the stock has been transferred possesses the qualifications required of other applicants for permits, *and* (2) is, at the time renewal is sought, an officer of the corporation, *or* (3) the qualified person has been an officer of the corporation for *any interval since* the original permit was issued. We conclude that this construction is in full harmony with the intention of the Legislature under the plain words of the statute.

The judgment of the trial court is affirmed.

Affirmed.