Charles McKINNEY, Appellant,

v.

SAN ANTONIO INDEPENDENT SCHOOL DISTRICT; Connie Rocha, Mary Alice Cisneros, Margaret Mireles, Sylvia Ward, Thomas D. Gaffney, Gene Garcia and Oscar G. Hernandez in their Official Capacities as Board Members, Appellees.

No. 04–94–00486–CV.

Court of Appeals of Texas, San Antonio.

March 31, 1995.

Rehearing Denied April 19, 1995.

Truman W. Dean, Jr., Texas State Teachers Ass'n Staff Counsel, Austin, for appellant.

James M. Heidelberg, Schulman, Walheim, Heidelberg & Acevedo, Inc., San Antonio, for appellees.

Before CHAPA, C.J., and HARDBERGER and DUNCAN, JJ.

## OPINION

HARDBERGER, Justice.

The question presented is whether a final judgment in a federal claim for race discrimination is res judicata of an action for enforcement of a state administrative order. We hold that it is not. Appellant, McKinney, appeals from a summary judgment granted in favor of the San Antonio Independent

School District in his action seeking enforcement of an order by the Texas Commissioner of Education reinstating him as a teacher in the district. The trial court specifically stated that the summary judgment was based on res judicata due to the final judgment in the prior federal race discrimination lawsuit. We reverse and remand.

## Facts

Charles McKinney, an African–American band teacher, was fired from his job with the San Antonio Independent School District (School). McKinney, believing the termination was due to his race, filed a race discrimination suit in U.S. District Court. At the same time he administratively appealed his termination under TEX.EDUC.CODE sec. 13.114 which provides in part: "no order adverse to the teacher shall be entered except upon majority vote of the full membership of the board of trustees." There are seven members of the board of trustees, and when the matter came to a vote only five persons voted: three voted to uphold the termination, and two voted against it. Two members did not vote. Therefore, the vote was one shy of the votes needed to support the termination. Nevertheless, the School did not reinstate him. McKinney appealed to the Commissioner of Education who ruled in his favor citing that the School had failed to get the four votes they needed to terminate employment. The School still refused to reinstate him. During this administrative process, but before the Commissioner had ruled, McKinney amended his federal court complaint. In his amended complaint he put the federal court on notice of the ongoing administrative proceeding and stated:

Plaintiff respectfully advises the Court that he intends to amend this case to present all his claims arising from the same facts and transactions in this venue once a final Agency ruling is obtained.

From that time forward, until the federal court finally rendered a summary judgment in favor of the School, the administrative proceedings are discussed and even testified about. In the summary judgment order, the Court mentions the administrative proceedings, but does not rule on them. The sole ground for the granting of the summary judgment order is:

Finding no genuine issue of fact regarding whether Defendant discriminated against Plaintiff based on his race, the Court concludes that Defendant is entitled to judgment as a matter of law.

Having lost his federal suit, and having won his administrative proceeding, McKinney filed suit in state court from which this appeal arises. The basis of this suit is to enforce the Education Commissioner's order and for breach of contract. This suit also fell victim to a summary judgment. The ground of this summary judgment is res judicata, referring back to the federal lawsuit.

This well briefed and ably argued lawsuit raises issues concerning the Eleventh Amendment of the Constitution, res judicata, jurisdiction and venue. These will be discussed below, but because we feel the Eleventh Amendment dominates the controversy, we reverse and remand.

## Eleventh Amendment and Res Judicata

Res judicata is a sensible and well established doctrine to prevent a litigant from trying the same issues over and over in subsequent lawsuits. With over-worked courts, once is quite enough.

■ Res judicata prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit. *See Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); *Eubanks v. F.D.I.C.*, 977 F.2d 166, 173 (5th Cir.1992).

There can be no doubt that McKinney tried, at least for a period of time, to place the enforcement of the commissioner's order, which he hoped to get, before the federal court. It is also undisputed that the federal

court made no rulings on any administrative matters. However, the fact that the federal court did not rule on the administrative matters or breach of contract action does not resolve the res judicata question. Res judicata not only encompasses "adjudicated" matters, but those matters that, with the use of diligence, *should* have been litigated in the prior suit.

This brings us to the Eleventh Amendment, which, in our opinion, would have prevented the federal court from ordering the School or any other state official to conform their conduct to state law. Nor does any theory of pendent jurisdiction permit such an evasion of the immunity guaranteed by the Eleventh Amendment. Further, any breach of contract claims are so interdependent and inextricably intertwined with state administrative law and the Commissioner of Education's decision that they could not have been ruled on in the racial discrimination federal suit.

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State,[1] or by Citizens or Subjects of any Foreign State.

The leading case in recent years on the Eleventh Amendment is *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). This was a class action brought by mentally retarded citizens for appalling conditions of confinement. The defendants were the institution, certain of its officials, the Pennsylvania Department of Public Welfare and various state and county officials. The Supreme Court held that the Eleventh Amendment prohibited the District Court from ordering state and county officials to conform their conduct to state law.

This Court's decisions thus establish that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Employees [v. Missouri Public Health Dept.], supra,* 411 U.S. [279], at 280, 93 S.Ct. [1614], at 1616 [36 L.Ed.2d 251 (1973)]. There may be a question, however, whether a particular suit in fact is a suit against a State. It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. . . .

*Pennhurst State School,* 465 U.S. at 100, 104 S.Ct. at 908.

The case goes forward to dispose of the theory of pendent jurisdiction:

This constitutional bar applies to pendent claims as well. As noted above, pendent jurisdiction is a judge-made doctrine of expediency and efficiency derived from the general Art. III language conferring power to hear all "cases" arising under federal law or between diverse parties. . . . Our decision in *Edelman v. Jordan* [415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)] makes clear that pendent jurisdiction does not permit such an evasion of the immunity guaranteed by the Eleventh Amendment . . . neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment.

*Pennhurst State School,* 465 U.S. at 120–121, 104 S.Ct. at 918–919.

■ It is clear that McKinney's placing the administrative matter before the federal court is of no consequence unless the School is not "the State or one of its agencies or departments." This is true because the prior federal court judgment has no res judicata effect as to matters that could not have been litigated in a federal court.

■ Clearly a state and its agencies, departments, and officials are protected from suit in federal court by the Eleventh Amend-

---

1. The Eleventh Amendment has been interpreted as applying to suits brought against a State by one of its own citizens. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

ment. *E.g., Kitchens v. Texas Dep't of Human Resources,* 747 F.2d 985 (5th Cir.1984). However, whether other governmental entities and their officials are within the immunity extended by the Eleventh Amendment depends upon the nature of the entity under state law, *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977), as well as the nature of the relief sought, *Pennhurst State School,* 465 U.S. at 123 n. 34, 104 S.Ct. at 920 n. 34. Therefore, to determine whether the School would have been entitled to assert the immunity contained in the Eleventh Amendment, and therefore whether McKinney could have litigated his enforcement and breach of contract claims in federal court, we must examine the nature of the School under Texas law, as well as the nature of the relief McKinney seeks in this suit.

■ Under Texas law, an independent school district is a political subdivision of the State. *C.B. Watts v. Double Oak I.S.D.,* 377 S.W.2d 779, 780 (Tex.Civ.App.—Fort Worth 1964, no writ). As such, it is considered by the Texas courts to be a governmental agency subject to the direction and control of the Texas Legislature. *Floydada I.S.D. v. Shipley,* 238 S.W. 1026, 1028 (Tex.Civ.App.—Amarillo), *aff'd on other grounds,* 250 S.W. 159 (Tex. Comm'n App.1923, judgm't adopted). It would appear, therefore, that Texas law treats a school district and its officials more like arms of the State than like counties or municipal corporations. This is especially true of an independent school district, such as the School, which by definition is separated from the control of a municipal corporation. TEX.EDUC.CODE ANN. § 19.101 (Vernon 1990 & Supp.1995). Moreover, independent school districts in Texas are in part funded by the State. *Id.* at § 16.251. Therefore, the relief McKinney seeks—an order compelling the School to reinstate him and money damages for breach of contract—will run against the State in large measure. Under these circumstances, we believe the School would have been entitled to assert Eleventh Amendment immunity in McKinney's prior federal court suit.

The School argues, however, that it is outside the protection of the Eleventh Amendment, citing *Lopez v. Houston I.S.D.,* 817 F.2d 351 (5th Cir.1987), *overruled in part on other grounds,* Walton v. Alexander, *44 F.3d 1297, 1303 n. 4 (5th Cir.1995). In* Lopez *a bus driver failed to take any action to stop students on his bus from beating a fellow student. Plaintiffs brought suit against the school district, the bus driver and two supervisors under 42 U.S.C. § 1983 and pendent state claims. The federal district court granted summary judgment to all defendants. The Fifth Circuit upheld the summary judgment as to the school and the supervisors, but ruled the plaintiffs could proceed to trial against the bus driver, Bradford. There is no discussion of the Eleventh Amendment, nor of Pennhurst State School, which had been decided three years earlier by the Supreme Court. The one time the Eleventh Amendment is mentioned in the entire opinion is in the following sentence:*

> The H.I.S.D. is a local governmental body under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), sufficiently distinct from the state to be outside the eleventh amendment. As a local government unit, it may not be held liable for a deprivation of a constitutional right solely because one of its employees is a tort-feasor, nor can it be held liable under § 1983 on a respondeat superior theory.

*Lopez,* 817 F.2d at 352 (citation omitted). While the sentence is written broadly enough to give credence to the School's position, we believe the School misperceives its import. Almost two decades ago, the Supreme Court recognized that "[t]he Eleventh Amendment, and the principle of state sovereignty which it embodies ... are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment." *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). However, for many years, civil rights suits did not lie against cities and other municipal corporations. *Monroe v. Pape,* 365 U.S. 167, 187–91, 81 S.Ct. 473, 484–86, 5 L.Ed.2d 492 (1961). In

1978, however, the Supreme Court held that civil rights suits are available against municipalities and other local governmental units if the plaintiff demonstrates a practice, custom, or policy underlying the alleged constitutional violation. *Monell v. Dept. of Soc. Serv. of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Accordingly, after *Monell,* the court is required to determine whether the plaintiff in a civil rights suit is required to demonstrate a practice, custom, or policy. That is the import of the Fifth Circuit's statement in *Lopez*—in that civil rights suit, the school district was a *Monell* defendant against whom the plaintiff was required to demonstrate a practice, custom, or policy; vicarious liability was an insufficient basis upon which to impose liability.

We do not believe that *Lopez* is controlling in this suit, which is not brought pursuant to the civil rights statutes and which seeks relief that in large measure will run against the State. We hold instead that McKinney could not have asserted the claims he now asserts in this suit in the prior federal court litigation because of the immunity afforded by the Eleventh Amendment. The prior federal court judgment therefore does not have res judicata effect as to the claims McKinney seeks to pursue in this suit. *See White v. White,* 149 S.W.2d 1031, 1033 (Tex.Civ. App.—Waco 1941, writ ref'd).

### Jurisdiction and Venue

■ In a cross point of error, the School complains the trial court erred in its determination that it had jurisdiction and that venue was proper in Bexar County. We believe that the trial court did have jurisdiction and that venue was proper in Bexar County.

The School's position is that the appropriate legal remedy for one who is *dissatisfied* with a final decision of the Commissioner of Education is to seek judicial review in accordance with APTRA, §§ 19(a) and (b); Acts 1975, 64th Leg., p. 136, ch. 61 (current version at Tex.Gov't Code Ann. §§ 2001.176, 2001.178 [Vernon Supp.1994]). This law

states in pertinent part that a person who is *aggrieved* by a final decision of an Agency should file a petition "in a District Court of Travis County, Texas."

The School also points out that § 13.115 of the Texas Education Code states at Paragraph (c):

"Either party to an appeal to the Commissioner shall have the right to appeal from his decision to a District Court in Travis County."

The School reasons that, under both APTRA and the Texas Education Code, McKinney should have brought his suit in Travis County, and not Bexar County.

This argument overlooks one important point. McKinney was not *aggrieved* by the Commissioner's decision. Rather he was pleased with the decision. He had won. His goal was to *enforce* the decision, not to overturn it. He chose to do this in Bexar County, a logical choice as it is the home county of the School. It was also a proper choice of venue.

■ Finally, the School raises the point that there is no authority for the District Court of Bexar County to hear a matter where it is being asked to enforce the Education Commissioner's order. We disagree. That authority is found in the Texas Constitution:

Sec. 8. District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body. District Court judges shall have the power to issue writs necessary to enforce their jurisdiction. . . .

Tex.Const. art. 5, § 8.

This broad expanse of power to the district courts encompasses the right to see that the Commissioner of Education's order is followed, and decide the intertwined damages

based on a breach of contract because the School refused to follow their own administrative rules. We overrule the School's cross-points of error.

Reversed and remanded.