SAN ANTONIO INDEPENDENT SCHOOL DISTRICT, Connie Rocha, Mary Alice Cisneros, Margaret Mireles, Sylvia Ward, Thomas D. Gaffney, Gene Garcia, and Oscar G. Hernandez, in their official capacities as board members, Petitioners,

v.

Charles McKINNEY, Respondent.

No. 95–0522.

Supreme Court of Texas.

Argued Nov. 29, 1995.

Decided Dec. 13, 1996.

Rehearing Overruled Jan. 31, 1997.

James M. Heidelberg, San Antonio, for petitioners.

Truman Dean, Jr., Austin, for respondent.

ENOCH, Justice.

The issue in this case is whether a prior federal court judgment precludes a subsequent action in state court asserting state law claims omitted in the federal action. In particular, we must decide whether an independent school district is entitled to Eleventh Amendment immunity from suit in federal court such that the federal court would have lacked jurisdiction of the omitted state law claims. The court of appeals concluded that a school district is an arm of the state entitled to Eleventh Amendment immunity. 897 S.W.2d 879. Because we conclude that an independent school district is more like a county or city than it is like an arm of the state, and is amenable to suit in federal court, we hold that res judicata precludes litigation of the omitted state law claims in state court. We reverse the judgment of the court of appeals and render judgment for the independent school district and its board of trustees.

Charles McKinney was fired from his job as a band teacher with the San Antonio Independent School District (SAISD). McKinney, an African–American, contends that the termination was race-related. Consequently, he filed a race discrimination lawsuit in federal district court. While his federal lawsuit was pending, McKinney administratively appealed his termination to the Commissioner of Education of the Texas Education Agency, arguing that SAISD did not follow proper procedures in firing him. The Commissioner ruled in his favor, but the school district refused to reinstate McKinney.

While his administrative appeal was pending, McKinney told the federal court that he intended to amend his federal complaint "to present all his claims arising from the same facts and transactions ... once a final Agency ruling is obtained." However, he never did so. The federal court eventually rendered a summary judgment against McKinney on his race discrimination claim.

McKinney then filed this suit against SAISD and its board of trustees in state court for breach of contract and to enforce the Commissioner's reinstatement order. SAISD moved for summary judgment, pri-

marily asserting that McKinney's suit was barred by res judicata because of the prior judgment in the federal race discrimination lawsuit. The trial court granted SAISD's motion. The court of appeals held that because an independent school district is an arm of the state, the Eleventh Amendment prevented McKinney from bringing his state claims against SAISD in federal court and thus, res judicata did not bar his current state suit. 897 S.W.2d at 884. We disagree.

## I

██ Because the first lawsuit at issue in this case was decided in federal court, federal law controls the determination of whether res judicata bars the present state court proceeding. *Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 718 (Tex.1990); *Jeanes v. Henderson,* 688 S.W.2d 100, 103 (Tex. 1985). Under federal law, the doctrine of res judicata will apply if (1) the parties in both suits are identical; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) there is a final judgment on the merits; and (4) the same cause of action is involved in both cases. *Eagle Properties,* 807 S.W.2d at 718. Additionally, even if the above four requirements are established, res judicata will not apply if the federal court (1) lacked jurisdiction over the omitted state law claims, or (2) possessed jurisdiction over the omitted state law claims but would clearly have declined to exercise that jurisdiction as a matter of discretion. *Id.* at 718; *Jeanes,* 688 S.W.2d at 104.

As framed by the parties, the dispositive question is whether the federal court lacked jurisdiction because of the Eleventh Amendment. There is no question that the federal court had supplemental jurisdiction under 28 U.S.C. § 1367.[1] And McKinney has not argued that had the federal court possessed jurisdiction it would clearly have declined to exercise supplemental jurisdiction over his omitted state law claims as a matter of discretion. Moreover, at oral argument, McKinney confirmed that his only argument against res judicata is that the Eleventh Amendment prevented the federal court from hearing his state law claims. Accordingly, we do not have before us the question of whether the federal district court "would clearly have declined" to exercise its supplemental jurisdiction over McKinney's state law claims as a matter of discretion. 28 U.S.C. § 1367(c); *see also Eagle Properties,* 807 S.W.2d at 718; *Jeanes,* 688 S.W.2d at 104. Instead, we must decide whether the San Antonio Independent School District is in effect the "State" so that the federal court would have lacked jurisdiction to consider McKinney's state law claims.

## II

The Eleventh Amendment limits the federal courts' judicial power specified in Article III, Section 2 of the United States Constitution. It provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. The Amendment by its terms does not bar suits against a state by its own citizens. However, the United States Supreme Court has consistently held that an unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state. *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974) (citations omitted). Accordingly, if against the State of Texas or an arm of the state, McKinney's claims are within the scope of the Eleventh Amendment.

██ By its terms, the protection afforded by the Eleventh Amendment is only available to "one of the United States." *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 400, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979). As such, whether a particular governmental entity enjoys the federal constitutional protection af-

---

1. In any civil action in which the federal district courts have original jurisdiction, the district courts have supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form a part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

forded to the states under the Eleventh Amendment is a question of federal law. *See Cowles v. Mercer*, 7 Wall. 118, 19 L.Ed. 86 (1868) (state law cannot defeat jurisdiction given by the Constitution). Under federal law, some state agencies exercising state power are permitted to invoke the Amendment to protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the state itself. *Lake Country*, 440 U.S. at 400–01, 99 S.Ct. at 1176–77. But the United States Supreme Court has "consistently refused to construe the Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power.' " *Id.* at 401, 99 S.Ct. at 1177.

■ Although the ultimate question of federal jurisdiction under the Eleventh Amendment is a federal constitutional question, state law informs the determination. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471 (1977). Accordingly, in *Mt. Healthy*, the Supreme Court examined the nature of the governmental entity, there a local school district board created under Ohio law, to determine whether it was more like a county or city than it was like an arm of the State of Ohio. *Id.* Our task, then, is to examine the legal and functional nature of an independent school district under Texas law and determine whether it is more like a county or city, or more like an arm of the state against whom a judgment would have essentially the same effect as a judgment against the State of Texas itself.

### III

■ Education of our children is an essential Texas value. *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 725 (Tex.1995) (*Edgewood IV*). As such, our Texas Constitution imposes on the Legislature a duty to make suitable provision for an efficient system of public free schools. Article VII, Section 1 states:

A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools.

TEX. CONST. art. VII, § 1. The Texas Legislature has created a three tiered system for implementing its educational obligation. At the state level, we have the Texas Education Agency, headed by the Commissioner of Education, and the State Board of Education. TEX.EDUC.CODE §§ 7.001–.112. Regionally, the Legislature created Regional Education Service Centers. *Id.* §§ 8.001–.124. At the local level are independent school districts, which have been the "basis of the public school system of Texas from the days of the Republic." *Love v. City of Dallas*, 120 Tex. 351, 40 S.W.2d 20, 24 (1931); *see also* TEX. EDUC.CODE §§ 11.001–.356.

The Legislature has given the Texas Education Agency and the State Board of Education only limited authority, specifically reserving for the school districts and their trustees and charter schools any educational function not delegated to the TEA or the Board. TEX.EDUC.CODE §§ 7.003, 11.151(b). As a result, independent school districts have the "primary responsibility for implementing the [S]tate's system of public education and ensuring student performance in accordance with the code." *Id.* § 11.002.

Under Texas law, independent school districts enjoy a large amount of political autonomy from the State, the TEA, and the Board. Each district is governed by a board of trustees elected by voters within a trustee district. TEX.EDUC.CODE §§ 11.051–.063. District trustees are granted "the exclusive power and duty to govern and oversee the management of the public schools of the district." *Id.* § 11.151(b). Trustees may adopt any rules or bylaws necessary to carry out their statutory powers and duties. *Id.* § 11.151(d). An independent school district has the power to levy and collect taxes and issue bonds. *Id.* §§ 11.152, 45.001–.232. Independent school districts have the right, through their boards of trustees, to sue and be sued "in the name of the district." *Id.* § 11.151(a). And they may acquire, hold, and sell real and personal property. *Id.* §§ 11.151–.156. Importantly, neither the TEA nor the Board may substitute its judg-

ment for the lawful exercise by district trustees of their powers and duties. *Id.* § 11.151(b).

■ In addition, the Legislature has defined school districts as political subdivisions of the State, like cities and counties, for purposes of sovereign immunity. A "governmental unit" means:

(A) this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;

(B) a political subdivision of this state, including any city, county, school district, junior college district. . . .

Tex.Civ.Prac. & Rem.Code § 101.001(2)(A)–(B). The fact that a school district enjoys sovereign immunity does not mean that it is in effect the State for purposes of the Eleventh Amendment. Cities and counties enjoy sovereign immunity, *City of Galveston v. Posnainsky,* 62 Tex. 118, 127 (1884); *Heigel v. Wichita County,* 84 Tex. 392, 19 S.W. 562, 563 (1892), except to the extent abrogated by the Texas Tort Claims Act, and yet they are not entitled to Eleventh Amendment immunity. *Lake Country,* 440 U.S. at 401, 99 S.Ct. at 1177; *Mt. Healthy,* 429 U.S. at 280, 97 S.Ct. at 572.

On several occasions we have identified school districts as political entities distinct from the State. In *Port Arthur Indep. Sch. Dist. v. City of Groves,* 376 S.W.2d 330, 333 (Tex.1964), we held that municipal building ordinances applied to independent school districts. The issue in that case was two-fold: (1) whether the school district would be considered as the State such that a city's police powers would not apply to the school district, and (2) if not, whether the Legislature had by statute occupied the particular field covered by the ordinance so that the city's police powers would not apply to the school district as a political subdivision. *Id.* at 332–33. The Court specifically rejected case law from another jurisdiction defining the school district as the State such that a city's ordinances would not extend to the district. *Id.* (citing

*Hall v. City of Taft,* 47 Cal.2d 177, 302 P.2d 574 (1956)). We said:

Although our independent school districts are creatures of the state and receive substantial funds for their operation from the state, they are independent political entities and we will not classify their property as state property.

*Id.* The Court went on to note that the Legislature had vested local school boards with broad powers, but had made no provision for regulating the construction or safety of school buildings. *Id.* As a political subdivision of the State, we held that the city's police powers applied to independent school districts.

■ Earlier, in *Love,* 120 Tex. 351, 40 S.W.2d 20, 25–27 (1931), we directly analogized school districts to cities, towns, and municipal corporations. School districts, we said, "are local public corporations of the same general character as municipal corporations." *Id.* 40 S.W.2d at 26. They are quasi-municipal corporations. *Id.* As such, we held that the Legislature was without power to compel a school district to provide additional facilities or teachers for the education of students from another district. *Id.* 40 S.W.2d at 30; *see also University Interscholastic League v. Midwestern Univ.,* 152 Tex. 124, 255 S.W.2d 177, 183 (1953) (independent school district is a quasi-municipal corporation that may contract to profit from football games played on its premises, subject to University Interscholastic League rules voluntarily assumed upon joining the League); *State v. School Trustees of Shelby County,* 150 Tex. 238, 239 S.W.2d 777, 782 (1951) (rural high school district, like common school district and independent school district, is a quasi-municipal corporation).

■ That Texas law defines independent school districts more like counties and cities than like an arm of the state does not end our inquiry. Eleventh Amendment immunity may extend to some state entities if a judgment against the entity would in effect be a judgment against the State. *Edelman,* 415 U.S. at 663, 94 S.Ct. at 1355–56; *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 463, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). While some independent school dis-

tricts receive substantial state funding, that fact alone is not determinative of whether the Eleventh Amendment's "core concern" is implicated. *See Hess v. Port Authority Trans–Hudson Corp.*, 513 U.S. 30, 47–51, 115 S.Ct. 394, 404–06, 130 L.Ed.2d 245 (1994) (describing the impetus for the Eleventh Amendment as the prevention of federal court judgments that must be paid out of a state's treasury and denominating this concern as the Amendment's "core concern"). Even a governmental entity that receives a "significant amount of money" from the State may not be an arm of the state. *Mt. Healthy*, 429 U.S. at 280, 97 S.Ct. at 573. For Eleventh Amendment purposes, it is not the entity's mere receipt of state funds that is important, but whether a money judgment against the entity must be paid with state funds. *Hess*, 513 U.S. at 48–50, 115 S.Ct. at 404–05.

■■■ The Legislature has designed an elaborate funding system for Texas independent school districts. TEX.EDUC.CODE ANN. §§ 41.001–45.232; *see Edgewood IV*, 917 S.W.2d at 727–29. Generally speaking, however, Texas' public education system is financed by ad valorem taxes generated by local school districts and supplemented with state funds. *See* TEX.EDUC.CODE ANN. §§ 42.101–.105, .251–.253, .302–.303; *Edgewood IV*, 917 S.W.2d at 727–29, 735; *Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.*, 826 S.W.2d 489, 494 (Tex.1992)("[L]ocal ad valorem taxes now are expected to provide most of the basic needs of education."). The most that can be said is that a judgment against a school district may be paid with funds initially appropriated to the school district by the State. However, the Eleventh Amendment is not concerned with tracing the source of funds used to satisfy a judgment. Rather, the Eleventh Amendment precludes actions against a state agency that must be paid from the state's treasury. A judgment against a school district must be paid from the funds of the school district, whether generated locally or appropriated by the State, not from the state treasury.

\* \* \* \*

We hold that an independent school district is more like a city or county than it is like an arm of the State of Texas and is amenable to suit in federal court under the Eleventh Amendment to the United States Constitution. The members of independent school district's board of trustees sued in their official capacities, likewise, are not protected by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985). Because the federal court had jurisdiction to consider McKinney's omitted state law claims against the school district and its board of trustees, res judicata precludes subsequent litigation of those claims in state court. We reverse the judgment of the court of appeals and render judgment that McKinney take nothing.

PHILLIPS, C.J., and HECHT, OWEN, BAKER and ABBOTT, JJ., join.

SPECTOR, J., filed a concurring opinion, joined by CORNYN, J.

GONZALEZ, J., filed a dissenting opinion.

Justice SPECTOR, joined by Justice CORNYN, concurring.

In this cause, we consider whether Charles McKinney could have brought state-law claims against a Texas school district in an earlier federal lawsuit. I agree with JUSTICE GONZALEZ that San Antonio Independent School District, like every other independent school district in Texas, is an arm of the state, although I disagree with him as to the judgment that the Court should render in this case. Because the district court in the earlier federal lawsuit would have been bound by precedent that would not afford Eleventh Amendment immunity to the district, I concur in the Court's judgment. The majority's lengthy analysis is, however, purely advisory.

At the time of McKinney's federal lawsuit, the Fifth Circuit had already decided that Texas school districts are not entitled to Eleventh Amendment immunity. *See Lopez v. Houston Indep. Sch. Dist.*, 817 F.2d 351, 353 (5th Cir.1987). The Fifth Circuit's hold-

ing in *Lopez* is clear: "The [Houston Independent School District] is a local governmental body ... sufficiently distinct from the state to be outside the eleventh amendment." *Lopez*, 817 F.2d at 353. This decision is binding precedent within the Fifth Circuit, and the federal district court in this case would have had no choice other than to follow it. Even if a majority of this Court were to disagree with the Fifth Circuit and conclude that a school district *is* an arm of the state, the federal district court would not have had the benefit of our views at the time McKinney's case was before it.

Although the majority acknowledges that Eleventh Amendment immunity is a question of federal law, 936 S.W.2d at 282, the opinion simply ignores a dispositive federal precedent. In this case, *Lopez* should have ended this Court's inquiry. Accordingly, I concur in the Court's judgment, but I do not join its opinion.

Justice GONZALEZ, dissenting.

The Court holds that a federal court judgment on federal issues is *res judicata*, barring McKinney's attempt to enforce a state administrative order in state court. I disagree. Under the Texas Constitution and our statutes, Texas school districts are arms of the state.[1] Inevitably, funds of the state will be tapped to pay any judgment. Thus, in my opinion, Texas school districts are entitled to a state's protection from suit in federal court provided by the Eleventh Amendment to the United States Constitution. I would affirm the judgment of the court of appeals.

Eleventh Amendment jurisprudence is grounded in the concept that the constituent states of our union "maintain certain attributes of sovereignty, including sovereign immunity." *Hess v. Port Authority Trans-*

*Hudson Corp.*, 513 U.S. 30, 39, 115 S.Ct. 394, 400, 130 L.Ed.2d 245 (1994), *citing Hans v. Louisiana*, 134 U.S. 1, 13, 10 S.Ct. 504, 506, 33 L.Ed. 842 (1890). The principle of a state's sovereign immunity is a constitutional limitation on federal court's judicial power. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 906–07, 79 L.Ed.2d 67 (1984). Political entities distinct from a state are not entitled to deference in our federal system. *Lincoln County v. Luning*, 133 U.S. 529, 530, 10 S.Ct. 363, 363, 33 L.Ed. 766 (1890). However, a state need not be a named party if an action is in practical effect one for recovery of money from the state. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974). If "indicators of immunity point in different directions," courts should "home in on the impetus for the Eleventh Amendment: the prevention of federal court judgments that must be paid out of a State's treasury." *Hess*, 513 U.S. at 47, 115 S.Ct. at 404 (1994). *See also Hess*, 513 U.S. at 60–61, 115 S.Ct. at 410 (O'Connor, J., joined by Rehnquist, C.J., and Scalia and Thomas, JJ., dissenting) (agreeing with the majority that "if an entity's bills will be footed by the State, the Eleventh Amendment clearly precludes the exercise of federal jurisdiction").[2]

Our Constitution charges the State Legislature with the responsibility for educating our children. Article VII, section 1 of the Texas Constitution commands state involvement in and funding of school districts: "A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools."[3] To this end, the Legislature

---

1. We have previously held that "[t]he school district's rights [to tax], to the extent they exist, are derived solely from the statutes that the Legislature may enact under the authority granted [by the Texas Constitution]." *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 739 (Tex.1995).

2. Even though the U.S. Supreme Court has emphasized that the source of funding money judgments is a critical tool for evaluating Eleventh Amendment questions, it recently reiterated that

immunity applies to suits seeking either monetary or nonmonetary relief. *See Seminole Tribe v. Florida*, —— U. S. ——, ——, 116 S.Ct. 1114, ——, 134 L.Ed.2d 252 (1996).

3. The Texas Education Code provides that "[i]t is the policy of this state that the provision of public education is a state responsibility and that a thorough and efficient system be provided and substantially financed through state revenue sources." TEX.EDUC.CODE § 42.001.

has created school districts to help discharge this duty. Sixty-five years ago we unequivocally stated that Texas school districts "are state agencies, erected and employed for the purpose of administering the state's system of public schools." *Love v. City of Dallas,* 120 Tex. 351, 40 S.W.2d 20, 26 (1931). We have held that "[t]he law is well settled in this state that an independent school district is an agency of the state" enjoying sovereign immunity for its negligence. *See Barr v. Bernhard,* 562 S.W.2d 844, 846 (Tex.1978); see also *Mumme v. Marrs,* 120 Tex. 383, 40 S.W.2d 31, 35 (1931)(public schools "are essentially state schools."); *Lewis v. Independent Sch. Dist. of City of Austin,* 139 Tex. 83, 161 S.W.2d 450, 452 (1942)(school districts are a "subdivision of the state."). Moreover, the Legislature labeled school districts as Texas state governmental units in the Texas Tort Claims Act. *See* TEX.CIV.PRAC. & REM. CODE 101.001(2)(B). The Act states that Texas school districts enjoy a greater level of immunity than any other "state entity": Sovereign immunity bars recovery against a Texas school district except when the claimed injury or injuries arise from the "operation or use" of a motor vehicle. *See id.* § 101.051.

In 1987, the Fifth Circuit held that Texas school districts were sufficiently distinct from the state to be outside of Eleventh Amendment protection. *Lopez v. Houston Indep. Sch. Dist.,* 817 F.2d 351, 353 (5th Cir.1987), *overruled on other grounds, Walton v. Alexander,* 44 F.3d 1297, 1304 n. 4 (5th Cir.1995). The court based its conclusion not on a detailed analysis of the political school district in that case, but on an earlier case which did not involve Eleventh Amendment principles. *Id., citing Kingsville Ind. School Dist. v. Cooper,* 611 F.2d 1109 (5th Cir.1980). The court's conclusion that Texas school districts were not entitled to Eleventh Amendment protection may or may not have been correct in 1987, but profound changes in our system of education since *Lopez* would require federal courts to reach a different result.

Since 1987, the relationship between the State and the school districts has radically altered in response to our decision in *Edgewood Indep. Sch. Dist. v. Kirby,* 777 S.W.2d 391 (1989). The Legislature's response to our decision was to pass legislation which had the practical effect of converting school district ad valorem taxes into a state tax. *See Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.,* 826 S.W.2d 489, 524 (Tex.1992). Thus, at the time of the *Carrollton–Farmers* decision, virtually all funds to support education in Texas public schools were state funds.

When the federal court rendered the judgment at issue in this case on June 10, 1993, the Texas Legislature had just enacted Senate Bill 7. Act of May 28, 1993, 73rd Leg., R.S., ch 347, 1993 Tex.Gen.Laws 1479, *discussed in Edgewood Ind. Sch. Dist. v. Meno,* 917 S.W.2d 717 (1995). It provided a two-tier structure for education finance, a basic allotment (tier 1) and a guaranteed yield (tier 2). In essence, the State guaranteed that a school district would receive a certain amount per child based on the local taxing effort between $0.86 and $1.50 per $100 valuation of property within the district. The State was obligated to make up the difference to the extent the local taxing effort failed to yield the benchmark amount. *Tex. Educ.Code* §§ 16.254 (repealed 1995); *see generally Edgewood Ind. Sch. Dist. v. Meno,* 917 S.W.2d at 726–27. Additionally, Senate Bill 7 imposed a cap on a school district's taxable property at a level of $280,000 per student. TEX.EDUC.CODE § 36.002 (repealed 1995).

Thus it can be seen that State funds are inextricably intertwined with local funds. Reviewing a similar system of school finance, the court in *Belanger v. Madera Unified School Dist.,* 963 F.2d 248 (9th Cir.1992), *cert. denied,* 507 U.S. 919, 113 S.Ct. 1280, 122 L.Ed.2d 674 (1993), held that a judgment against a California school district would be tantamount to a judgment against the State, and therefore the district was entitled to Eleventh Amendment protection. Under California law:

> The state sets a revenue limit for each school district based on average attendance, subtracts property tax revenues from that limit, and allocates the balance to the school district from the state school fund. . . . .

Under the centralized revenue limit system, the allocation of property tax revenue is hopelessly intertwined with the allocation of state funds, and any change in the allocation property tax revenue has a direct effect on the allocation of state funds.

*Id.* at 252.

Given this background, it strains credulity to argue that a money judgment against a district is not paid in whole or in part from state funds. I believe that our laws authorize school districts to take advantage of Eleventh Amendment immunity. The San Antonio Independent School District retains its immunity as an arm of the state for sovereign immunity and Texas Tort Claims Act purposes. I would hold that because of Eleventh Amendment immunity, the judgment in federal court on federal issues is not a bar when a plaintiff such as Charles McKinney seeks to enforce a state administrative order in state court. Therefore, I dissent.