

NUMBER 13-09-00371-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**EDUCATION SERVICE CENTER, REGION II,**                    **Appellant,**

**v.**

**ROSE MARIKUDI AND JESSY PEECHATUKUDIYIL,**          **Appellees.**

**On appeal from the County Court at Law No. 3
of Nueces County, Texas.**

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion by Justice Garza

Appellant, Education Service Center, Region II ("Service Center"), files this accelerated interlocutory appeal following the trial court's denial of its plea to the jurisdiction.[1] By its first issue, the Service Center argues that the trial court erred in denying its plea to the jurisdiction because the Service Center, as a quasi-governmental entity, did not receive notice of the claim as required under the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a), (c) (Vernon 2005). In its second issue,

---

[1] Section 51.014(a)(8) of the Texas Civil Practice and Remedies Code authorizes a governmental unit to appeal an interlocutory order that grants or denies a plea to the jurisdiction. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (Vernon 2005). The Service Center is a quasi-governmental unit entitled to appeal under this provision. *Id.*; *see Davis v. Educ. Serv. Ctr., Region VIII*, 62 S.W.3d 890, 896 (Tex. App.–Texarkana 2001, no pet.)

the Service Center argues that appellees, Rose Marikudi and Jessy Peechatukudiyil, could not sue the Service Center by virtue of their election of remedies under the Texas Tort Claims Act.  *See id.*  We reverse and render.

## I. BACKGROUND

This case arises from a motor vehicle accident that occurred on May 23, 2004 on Highway 59 in Wharton County, Texas.  On that day, Service Center employee Susan Matthews was driving her personal vehicle to Houston, Texas from Corpus Christi, Texas to attend a business conference.  While driving, Matthews merged into a right-hand lane and allegedly caused Joseph Martin, who was driving a passenger van in that lane, to veer off the highway to avoid a collision.  Appellees were passengers in this van and suffered serious injuries.  Matthews witnessed the passenger van exit the highway in her rearview mirror, exited at the next available turnaround, and reported what she had seen to a law enforcement official.  The official asked Matthews to follow his patrol car back to the location of the accident.  Although Matthews followed the official in her own vehicle, she left the scene of the accident prior to being formally questioned by authorities.  Matthews later called Wharton County law enforcement to identify herself and cooperate with the investigation of the accident.  Authorities cited Matthews for making an unsafe lane change and also informed her that certain passengers were injured.  The record reflects that Matthews did not inform her employer, the Service Center, about the accident at that time.

In April of 2006, appellees filed suit in Nueces County against Matthews and Martin. In their initial petition, appellees did not name the Service Center as a defendant.  On July 18, 2006, during the course of discovery, Matthews answered an interrogatory regarding whether she was in the course and scope of her employment during her trip to Houston as "N/A," or "not applicable."  During her deposition on May 2, 2007, however, Matthews testified, for the first time, that she was driving to a business conference for the Service Center when the accident occurred, thus placing her in the "course and scope of

2

employment" at the time of the accident.[2]  After her deposition, Matthews telephoned the director of human resources at the Service Center to inform the director about the May 2004 vehicle accident.

On August 16, 2007, Martin filed a "Motion for Leave of Court to File Third Party Designation" and a "Third Amended Answer and Designation of Responsible Third Party," naming the Service Center as a third party defendant.  Appellees amended their petition on October 11, 2007 to add the Service Center as a named defendant.  The Service Center filed a plea to the jurisdiction under the Texas Tort Claims Act, claiming it was entitled to governmental immunity.  The trial court denied the Service Center's plea to the jurisdiction and a subsequent motion for reconsideration on the same issue.  In response, appellant filed this interlocutory appeal to challenge the order denying the plea to the jurisdiction.  *See id.* § 51.014(a)(8) (Vernon 2005).

## II. STANDARD OF REVIEW

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).  The plea challenges the trial court's subject-matter jurisdiction over the cause of action.  *Tex. Parks & Wildlife Dep't v. Morris*, 129 S.W.3d 804, 807 (Tex. App.–Corpus Christi 2004, no pet.).  Whether a trial court has subject-matter jurisdiction is a question of law.  *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Morris*, 129 S.W.3d at 807.  Accordingly, we review a trial court's ruling on a plea to the jurisdiction de novo.  *Miranda*, 133 S.W.3d at 226; *Morris*, 129 S.W.3d at 807.

The plaintiff has the burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *Univ. of N. Tex. v. Harvey*, 124 S.W.3d 216, 220 (Tex. App.–Fort Worth 2003, pet.

---

[2]  This is not disputed; both appellants and appellees agree that Matthews was in the "course and scope" of her employment at the time of the accident.

3

denied). If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, even where those facts may implicate the merits of the case. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2008) (citing *Miranda*, 133 S.W.3d at 227); *see Bland Indep. Sch. Dist.*, 34 S.W.3d at 555. If the evidence creates a fact issue as to jurisdiction, then it is for the fact-finder to decide. *City of Waco*, 298 S.W.3d at 622; *Miranda*, 133 S.W.3d at 227-28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, [we rule] on the plea to the jurisdiction as a matter of law." *Miranda*, 133 S.W.3d at 228.

### III. DISCUSSION

Under Texas law, sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits against the State or certain governmental units unless the State expressly consents to the suit. *Miranda*, 133 S.W.3d at 224. Governmental immunity operates in a similar way by offering governmental subdivisions, such as counties, cities, and school districts, immunity from suit unless that immunity is clearly waived. *Davis v. Educ. Serv. Ctr., Region VIII*, 62 S.W.3d 890, 896 (Tex. App.–Texarkana 2001, no pet.). The Service Center is a quasi-governmental entity entitled to immunity under the Texas Tort Claims Act.[3] *See id.*

Chapter 101 of the Texas Civil Practice and Remedies Code (the "Texas Tort Claims Act") generally waives governmental immunity to the extent that liability arises from the use or operation of a motor vehicle. TEX. CIV. PRAC. & REM. CODE ANN. § 101.051 (Vernon 2005); *Mission Consol. Ind. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655-56 (Tex.

---

[3] The Texas Legislature, under its constitutional duty to implement the state's public education system, *see* TEX. CONST. art. VII, § 1, has constructed a three-tiered system to manage public schools in Texas. *Davis*, 62 S.W.3d at 896 (citing *San Antonio Indep. Sch. Dist. v. McKinney*, 936 S.W.2d 279, 282 (Tex. 1996)). The Texas Education Agency and the State Board of Education administer schools at the state level; regional education service centers administer at the regional level; and independent school districts administer at the local level. *Davis*, 62 S.W.3d at 896. Appellant is an agency of the State and thus qualifies as a quasi-governmental unit under Texas Civil Practice and Remedies Code section 101.001(3). TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3) (Vernon Supp. 2002); TEX. EDUC. CODE ANN. §§ 8.001-.125 (Vernon Supp. 2002).

4

2008).   However, to sue under this statute, plaintiffs must comply with the statute's mandatory requirements, such as proper notice to the governmental subdivision.  Section 101.101 of the Texas Tort Claims Act provides that:

> (a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:
>
> > (1) the damage or injury claimed;
> >
> > (2) the time and place of the incident; and
> >
> > (3) the incident.
>
> . . . .
>
> (c) The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a), (c).   The purpose of the notice requirement is to ensure that the governmental unit can record the claim, investigate and gather information regarding the incident, and guard against possible frivolous claims. *City of Houston v. Torres*, 621 S.W.2d 599, 591 (Tex. 1981).  Section 311.034 of the Texas Government Code specifically provides that "[s]tatutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."  TEX. GOV'T CODE ANN. § 311.034 (Vernon Supp. 2009).  Notice under section 101.101 is jurisdictional and, thus, absolutely required before a plaintiff can file suit.  *See Brazoria County v. Colquitt*, 282 S.W.3d 582, 587 (Tex. App.–Houston [14th Dist.] 2009, pet. filed); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101.

## A.____Formal Notice

In the case at bar, the record reflects that the Service Center received no formal notice within the required six-month period under section 101.101(a).  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a).  According to Matthews's deposition, she had no

recollection of reporting the accident to her employer at or near the time it occurred:

> Q.  Did you report this wreck to your employer?
>
> A.  *I don't think I did, I don't know*, you know, we've had some changes of supervisors and I know I may have told the one who had left but *I don't really remember*.

(Emphasis added). The lack of formal notice is further corroborated by the affidavit of Linda Gehman, Director of Human Resources for the Service Center. In her affidavit, Gehman states that Matthews first reported this accident nearly three years after it occurred:

> On May 3, 2007, Susan Matthews, a former employee of the Region II Service Center, called me on the telephone and informed me that she was involved in a lawsuit as a result an automobile accident that occurred on or about May 23, 2004. Ms. Matthews had not previously informed anyone at the Region II Service Center about the accident. Ms. Matthews'[s] telephone call on May 3, 2007 was the first notice or report to anyone at the Region II Service Center of the May 23, 2004, accident. I have reviewed the pertinent files at the Region II Service Center and there is no documentation regarding the accident. There is also no First Report of Injury in Ms. Matthews'[s] file or on file with the Region II Service Center regarding the May 23, 2004 accident.

Based on Matthews's deposition testimony and Gehman's uncontroverted sworn affidavit, we conclude that the Service Center did not have formal notice of the claim.

**B.  Actual Notice**

Because we have held that Matthews did not provide formal notice to the Service Center, we must examine whether the Service Center had actual notice of the accident under section 101.101(c). *See id*. § 101.101(c). In *Cathey v. Booth*, the Texas Supreme Court held that actual notice to a governmental unit requires knowledge of: (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved. 900 S.W.2d 339, 341 (Tex. 1995). A governmental entity must have knowledge of "the information it is entitled to be given under [section] 101.101(a) and a subjective

awareness that its fault produced or contributed to the claimed injury." *Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 348 (Tex. 2004). Subjective awareness is required because a governmental entity does not have the same incentive to investigate a matter if it is not subjectively aware of its fault or liability. *Id*.

If an agent or representative who received notice of the accident had a duty to gather facts and report, actual notice can be imputed to the governmental unit. *City of Galveston v. Shu*, 607 S.W.2d 942, 946 (Tex. Civ. App.–Houston [1st Dist.] 1980, no writ); *City of Texarkana v. Nard*, 575 S.W.2d 648, 653 (Tex. Civ. App.–Tyler 1978, writ ref'd n.r.e.). For example, in *City of Texarkana v. Nard*, the Tyler Court of Appeals ruled that the City of Texarkana had "actual notice" of an automobile accident caused, in part, by a malfunctioning city traffic signal light. 575 S.W.2d at 653. The factors significant in determining that the City of Texarkana had actual notice were that: a city police officer, Officer Frei, interviewed both drivers involved in the accident and prepared an investigation report; the city's ambulance service mailed a bill to the appellee demanding payment for transportation to the hospital from the accident scene; the City Attorney visited with the Police Chief "for the purpose of discussing reporting procedures and the accident"; the appellee's attorney discussed the matter with the city's Police Chief; and the city's Public Works Department conducted its own investigation. *Id*. at 650-51. The court ultimately held that:

> We think the fact that Officer Frei had actual notice that the appellee had received injuries and damages must be imputed to the City because such notice came to him as a representative of the City at a time when he was charged with a duty to gather the facts surrounding the accident and make known to the City that injuries and damages were sustained in the collision.

*Id*. at 653. The evidence showed that "the Police Department was the instrumentality through which the City elected to deal with the investigation of accidents." *Id*.

Similarly, in *City of Galveston v. Shu*, the First Court of Appeals found that the City of Galveston had actual notice of an accident between plaintiff's vehicle and a Galveston Police Department van. 607 S.W.2d at 946. The appellate court reasoned that Galveston

7

had actual notice because Galveston police officers investigated the accident, took witness statements, and photographed the accident scene. *Id.* at 945-46. Notably, the court held that "before notice to an agent or representative will be imputed to his principal or superior, it must have come to him at a time when he was engaged in the business of his principal under circumstances imposing upon him the reasonable duty of making the facts known to his superior." *Id*. at 945; *see Rosales v. Brazoria County*, 764 S.W.2d 342, 345 (Tex. App.–Texarkana 1989, no writ) (concluding that Brazoria County had actual notice of an accident when the county sheriff's department prepared a fleet accident report and an internal report and the Alvin Police Department forwarded its own investigation report to the county sheriff's office and the county treasurer).

Accordingly, we must determine whether Matthews was the type of employee that had a "duty to report and gather facts," which would then allow her knowledge of the accident to be imputed to the Service Center. *Shu*, 607 S.W.2d 942. According to the deposition of Jose Cantu, the Service Center's Deputy Director of Fiscal Affairs, an employee like Matthews did in fact have a duty to report motor vehicle accidents.[4] Cantu testified as follows:

> Q.   Well, tell me what an employee was supposed to do if while they were on the job for the Center they were involved in an accident.
>
> A.   If an employee was involved in an accident, it was–it is their duty to contact my office or some member of the administration to inform them of that accident.

However, according to Cantu, Matthews did not have a duty to "gather facts" or "investigate" the vehicle accident for the Service Center:

> Q.   All right. And was [Matthews] also responsible in contacting [the Service Center] to inform them of who was–who else was involved in the accident?
>
> A.   Not necessarily.

---

[4] Cantu's deposition testimony revealed that a Service Center employee's "duty to report" accidents was set forth in an "Associate Handbook," an employee manual for all Service Center employees. However, because the Associate Handbook was not made an exhibit to Cantu's deposition, it is not part of the record before this Court.

Q.     What should she have reported?

A.     Normally we ask the employee just to call in if they've been in an accident. When they call in, then we will then–you know, again, based on the circumstances as to what might have happened, we'll ask as to, you know, if they're okay, was anybody else involved. And then we'll ask them just to make sure that they tell the office that we will probably be asking for a police report. And if it's close enough, then chances are that one–either myself or a member of the administrative team will go out to the site.

Q.     Are they supposed to fill out an accident report?

A.     No.

Q.     The employee is not required to fill out any kind of incident report?

A.     No.

Q.     . . . Do you agree that they need to get the identity of the other people involved in the accident?

        . . . .

A.     We don't require it. We don't request it . . . .

Q.     And anything else–what else would you like them to gather?

A.     Just basically the date of the accident, you know, and then if there was any witnesses to the accident because everything else will be in the police report. And I do not require them to seek any other information.

Q.     Do you ask them how the wreck happened?

A.     Probably not. I might, you know, ask where they were heading, you know, because–just to kind of check and see if it was within the scope of their job duties for that day.

Q.     Do you ask the employee who they believe was at fault for the wreck?

A.     No, because I am not the one to judge as to whether they were at fault or not. I mean, I guess that's where the police reports come into play.

        . . . .

Q.     Let's go through some of these other duties or procedures that are listed on here. It says document. And we were discussing this a moment ago. It says document action/investigation. Does that imply the employee involved in the accident?

A.     That one says document the action and investigation. Basically that is our duty not the employee duties. That's the administration piece

9

of it.

Although Cantu's deposition reveals that the Service Center considers additional information about accidents helpful, such as the date of the accident or the names of other persons involved, it does not require employees to obtain this information. Based on this evidence, we do not believe that Matthews was the type of employee contemplated under the current case law for whom notice can be imputed to her employer. While Matthews may have had a duty to report the incident, the record does not establish that she had a duty to investigate or "gather facts" about it. According to her deposition, Matthews was an educational consultant for the Service Center whose job was "to work with children with disabilities and provide technical support with teachers and parents on how to adapt." Unlike the police officers in *Nard, Shu*, and *Rosales*, neither Matthews nor anyone in her position were the "instrumentalities" through which the Service Center "elected to deal with the investigation of accidents." *See Rosales*, 764 S.W.2d at 345; *Shu*, 607 S.W.2d at 945-46; *Nard*, 575 S.W.2d at 653. The *Nard, Shu*, and *Rosale*s courts determined that police departments were the mechanisms through which governmental entities investigated accidents, photographed accident sites, interviewed witnesses, and prepared accident reports. *See Rosales*, 764 S.W.2d at 345 ("Actual notice was imputed to the county, because it came to the officers of the sheriff's department as representatives of the county at a time when they were charged with a duty to gather the facts surrounding the accident and to report to the county, by way of internal report."); *see also Nard*, 575 S.W.2d at 653; *Shu*, 607 S.W.2d at 945-46. There is no evidence in the record to indicate that the Service Center had this same expectation of Matthews.[5]

Appellees argue that the question of whether the Service Center had actual notice is a fact issue. They note that a court cannot rule on a plea to the jurisdiction if a fact issue exists. *Miranda*, 133 S.W.3d at 227-28. However, the evidence in the record does not

_____

[5] As Matthews is not the type of employee who can impute "actual notice" to her employer, we do not analyze the issue of whether the Service Center had "subjective awareness" of its fault in the accident. TEX. R. APP. P. 47.1; s*ee Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 348 (Tex. 2004).

10

raise the issue of actual notice as a question of fact. Cantu's deposition demonstrated that Matthews was not the type of employee expected to "gather facts" about the accident made the basis of this case. Additional information about the accident was useful but it was not required. Although actual notice is a fact question when evidence is disputed, in some instances, actual notice can be determined as a matter of law. *Simons*, 140 S.W.3d at 348. In this case, we find that there was no actual notice as a matter of law.[6] The Service Center did not know about this motor vehicle accident within section 101.101's six month time period. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a).

## IV. CONCLUSION

We reverse the judgment of the trial court and render judgment granting the Service Center's plea to the jurisdiction, thus dismissing the case.

_____
DORI CONTRERAS GARZA,
Justice

Delivered and filed the
1st day of April, 2010.

---

[6] Because we have decided the appeal on the issue of notice, we do not address appellant's election of remedies issue under section 101.106. *See* TEX. R. APP. P. 47.1.